**GENERAL ELECTRIC CAPITAL, CORP., a New York Corporation, and General Electric Capital Commercial Automotive Finance, Inc., a Delaware Corporation, Plaintiffs,**

v.

**EQUIFAX SERVICES, INC., a Georgia Corporation, Defendant.**

No. 90 C 7076.

United States District Court,
N.D. Illinois, E.D.

July 30, 1992.

---

1434

Kurt L. Schultz, W. Gordon Dobie, Winston & Strawn, Chicago, Ill., for plaintiffs.

Paul Stephen Turner, Michael C. Cook, Robert Bernard Blasio, David Luther Hartsell, McCullough, Campbell & Lane, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court are the parties' cross-motions for summary judgment. Defendant, Equifax Services, Inc. ("Equifax"), moves for summary judgment on Counts II, III and IV of the complaint and for partial summary judgment limiting plaintiffs' potential recovery on Count I. Plaintiffs, General Electric Capital Corporation ("GECC") and General Electric Capital Commercial Automotive Finance, Inc. ("GECCAF"), have responded to Equifax's motion and have also filed a cross-motion for summary judgment on Count I and requesting an order striking Equifax's First and Fifth Affirmative Defenses. For the reasons discussed below, Equifax's motion for summary judgment on Count II is denied. Equifax's motion for summary judgment on Counts III and IV is granted. Equifax's motion for partial summary judgment on Count I is denied. GECC's motion for partial summary judgment on Count I is granted.[1]

## I. FACTS [2]

GECC is a New York corporation in the business of financing durable goods and

---

**1.** The parties have also filed motions *in limine* as part of their pretrial order. The court disposes of these motions in a separate order issued today.

**2.** Unless otherwise indicated, the facts are taken from the complaint and the parties' filings in compliance with United States District Court for

other assets, including automobile inventory for dealers throughout the United States. GECC provides a line of credit to dealerships, which allows the dealership to purchase automobiles from the manufacturer and place them in a showroom for sale. As each automobile is sold, the dealer remits the outstanding balance for that vehicle to GECC. This arrangement is commonly known as "floor plan financing."

GECCAF is a Delaware corporation in the business of providing credit to automobile dealers for the purpose of purchasing motor vehicle inventories. On June 1, 1989, GECC acquired the outstanding stock and assets of Transamerica Automotive Finance Corporation ("Transamerica") from Transamerica Commercial Finance Corporation, I. GECC changed Transamerica's name to General Electric Capital Commercial Automotive Finance, Inc.

Equifax is a Georgia corporation in the business of providing floor plan financing services and business information to lenders for inventory control and collection purposes.[3] GECC and Equifax entered into a contract in 1986,[4] under which Equifax would provide inspection services in connection with GECC's automobile dealer financing business. Under the contract, Equifax was to inspect automobile inventories by means of a visual examination of the vehicles. If a vehicle could not be visually examined, Equifax was to check the "Manufacturers Statement of Origin" to verify that the vehicle was part of the dealer's inventory.

As part of GECC's acquisition of Transamerica, GECC requested Equifax to conduct a floor plan inspection at Dabelow Pontiac–Buick, Inc. (the "Dabelow dealership"), located in Cannon Falls, Minnesota.

The Dabelow dealership was part of the Transamerica loan portfolio which GECC was acquiring. As part of the acquisition agreement between GECC and Transamerica, GECC had 30 days in which to inspect the loan portfolio. On June 23, 1989, Equifax's field representative, Roger E. Knudtson, visited the Dabelow dealership and conducted a floor plan inspection. A written report details the results of that inspection.[5] Knudtson's inspection is at the heart of this lawsuit. GECC and GECCAF contend that Knudtson misreported a number of vehicles in his inspection report. On September 26, 1989, GECC made a written claim against Equifax regarding the accuracy of the Dabelow Pontiac floor plan inspection. In that letter, GECC complained that "nine vehicles, nearly [$130,-000] in inventory, were possibly sold and delivered prior to the June inspection and not reported on the Equifax inspection."[6]

GECC and GECCAF filed a complaint as a result of the above described inspection. In Count I of the complaint, GECC alleges that Equifax breached its contract with GECC by failing to conduct an adequate inspection of the Dabelow dealership on June 23, 1989. In Count II, GECC alleges that Equifax was negligent in providing business information and conducting the inventory inspection at the Dabelow dealership. In Count III, GECCAF alleges it is a third party beneficiary of the contract between Equifax and GECC, and thus, GECCAF is entitled to recover against Equifax for Equifax's alleged breach. In Count IV, GECCAF avers that it has been injured by reason of Equifax's allegedly negligent inspection of the Dabelow dealership.

the Northern District of Illinois, Local Rule 12(m), (n).

3. The court has jurisdiction over this suit on the basis of diversity of citizenship. 28 U.S.C. § 1332. Where jurisdiction is based on diversity of citizenship, the resolution of substantive issues is controlled by the applicable state law. *La Salle Nat. Bank v. Service Merchandise Co.,* 827 F.2d 74, 78 (7th Cir.1987). The parties agree that the applicable state law is the law of Illinois.

4. Actually, the contract was between Equifax and GECC's predecessor corporation, General Electric Credit Corporation. The distinction is not relevant to the motions presently before the court.

5. The parties dispute whether Knudtson prepared the entire report.

6. GECC and GECCAF now claim that up to 21 vehicles were misreported on the Equifax inspection report.

Equifax answered and asserted five Affirmative Defenses. Only the First and Fifth Affirmative Defenses are relevant to the motions pending. Equifax's First Affirmative Defense states that Counts II and IV, the negligence counts of the complaint, fail to state a claim, as Equifax owes no independent, extra-contractual duty to either GECC or GECCAF. In addition, Equifax's First Affirmative Defense states that Counts II and IV, further fail to state a claim because GECC and GECCAF are not entitled to collect for economic losses arising out of tort. Equifax's Fifth Affirmative Defense states that to the extent that Equifax has any liability with respect to the accuracy of the Dabelow floor plan inspection, that liability is limited. Equifax asserts that paragraph four of the GECC–Equifax contract limits plaintiffs' measure of damages to the remaining balance on the nine automobiles involved, plus interest.

Equifax has moved for summary judgment in its favor and against plaintiffs on Counts II, III, and IV of the complaint and for partial summary judgment limiting plaintiff's recovery on Count I to $128,878. GECC and GECCAF responded by moving for an order granting partial summary judgment in their favor and striking Equifax's First Affirmative Defense and Fifth Affirmative Defense.

## II. DISCUSSION

### A. Standard of Review

■ A motion for summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party opposing a motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir.1989). A genuine issue of material fact exists only where

there is sufficient evidence favoring the non-moving party to support a jury verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). All reasonable factual inferences must be viewed in favor of the non-moving party. *Holland v. Jefferson Nat'l. Life Ins. Co.,* 883 F.2d 1307, 1312 (7th Cir.1989). If the evidence presented by the non-movant is merely colorable or is not sufficiently probative, summary judgment is appropriate. *Wolf v. Fitchburg,* 870 F.2d 1327, 1330 (7th Cir.1989).

### B. Equifax's Motion for Summary Judgment

In seeking to narrow the issues of this case, Equifax's motion for summary judgment states that this case is a straightforward breach of contract claim. Unfortunately for Equifax, it is not. First, Equifax maintains that GECC may not maintain a negligence action against it for two reasons: (1) Equifax owes no extra-contractual tort duty to GECC and (2) GECC may not recover against Equifax in tort for purely economic damages. Hence, Equifax concludes judgment must be entered in its favor on Count II of the complaint. Next, Equifax argues that GECCAF is not a third-party beneficiary of the contract between GECC and Equifax. Equifax concludes, therefore, that judgment must be entered in its favor on Counts III and IV of GECCAF's complaint since GECCAF is not a proper party to the suit. Last, Equifax claims that even if it is held to be liable to GECC and GECCAF, a specific provision of the contract between the parties limits Equifax's liability to the outstanding balance on the allegedly misreported vehicles.

#### 1. Count II—Equifax's Tort Liability to GECC

Equifax asserts in its First Affirmative Defense that Count II, the negligence count, fails to state a claim because Equifax owes no independent, extra-contractual duty to GECC. In addition, Equifax asserts that Count II also fails to state a claim because GECC is not entitled to col-

**1438**

lect for economic losses arising out of tort. We address each issue separately.[7]

### a. Equifax's assertion that it owes no duty to GECC

According to Equifax, a claim for negligent misrepresentation must be supported by an independent, extra-contractual duty. The existence of a legal duty is a question of law to be determined by the court. *Roe v. Catholic Charities of the Diocese of Springfield,* 225 Ill.App.3d 519, 167 Ill.Dec. 713, 722, 588 N.E.2d 354, 363 (1992); *cf. Garris v. Schwartz,* 551 F.2d 156, 162 (7th Cir.1977). Equifax's argument raises a complicated issue involving the interrelationship between Illinois' *Moorman* doctrine on economic loss and the tort of negligent misrepresentation by one in the business of providing information to others. *Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). Adding to the intricacy of the issue is the apparent conflict among several courts as to whether a duty independent of a contract is necessary to maintain an action for negligent misrepresentation between contracting parties.

The Seventh Circuit Court of Appeals has addressed the issue of contractual duties in the tort of negligent misrepresentation by an information provider. *See Rankow v. First Chicago Corp.,* 870 F.2d 356, 366 & n. 13 (7th Cir.1989). In *Rankow,* the plaintiffs, who were owners of common stock in First Chicago Corporation ("First Chicago"), were participants in a dividend reinvestment and stock purchase plan. Under the plan, plaintiffs were entitled to reinvest their dividends and make optional cash payments toward the purchase of additional common stock at below the prevailing market rate. Plaintiffs allegedly participated in the plan so that they could immediately resell the shares purchased under the plan for a profit. Therefore, it was crucial that the plaintiffs have reliable information about the pricing dates at which time the additional common stock

would be priced at the below market rate. The rules regarding the pricing dates were contained in the plan prospectus, which embodied the contract between the parties. Defendant First Chicago, a bank, negligently provided plaintiffs with the wrong pricing date. *Rankow,* 870 F.2d at 356. As a result, plaintiffs allegedly incurred a loss upon reselling the common stock purchased. Plaintiffs sued the bank alleging breach of contract and negligent misrepresentation. Plaintiffs alleged a contractual duty on the part of the bank to use due care in providing accurate information about the pricing dates of certain stocks. The *Rankow* court found that the defendant owed a clear duty to the plaintiffs by virtue of their contractual relationship. *Rankow,* 870 F.2d at 366. The court stated:

> Although First Chicago correctly concludes that the *existence* of a duty is an issue of law ..., there is no real issue regarding the existence of a duty in this case. First Chicago owed a clear duty by virtue of its *contractual relationship* with the plaintiffs; there is no question involving third parties or extracontractual dealings of the kind found in the Illinois cases in which existence of a duty has been deemed problematic.
>
> \* \* \* \* \* \*
>
> We conclude that, at least as a matter of pleading, this case involves a defendant part of whose business seems to be to provide information and financial services to its stockholders, *to whom it owes a duty.* The plaintiff has therefore made a sufficient allegation to state a claim under a negligent misrepresentation theory.

*Rankow,* 870 F.2d at 366 (second and third emphasis added) (footnote and citation omitted). The *Rankow* court explicitly found that the duty to provide accurate information originated from the contract itself: "[P]laintiffs allege a contractual duty to use due care in providing accurate information about the Plan and its pricing

**7.** Equifax asserts similar arguments against GECCAF. The court addresses these arguments *infra.*

dates, and that seems to fall squarely within the bounds of the existing contract." *Rankow*, 870 F.2d at 366 n. 13.

Citing to a line of Illinois cases, the *Rankow* court noted that the simple existence of a contract does not automatically give rise to a tort duty. *Rankow*, 870 F.2d at 366 n. 13. In *Ferentchak v. Village of Frankfort*, 105 Ill.2d 474, 86 Ill.Dec. 443, 475 N.E.2d 822 (1985), the Illinois Supreme Court considered whether a civil engineer could be held liable for failure to establish minimum foundation grade levels for the plaintiff's home when the engineer designed surface water plans for the plaintiff's subdivision at the request of the developer and not the plaintiffs. Plaintiffs contended that the contract between the engineer and the developer created a duty to the plaintiffs. The court disagreed: "The evidence indicates that [the engineer] was not asked by [the developer] to set the foundation grade levels. On the contrary, [the developer] retained control of what was built on the individual lots by providing, in the recorded 'declaration of covenants, conditions, restrictions, reservations, equitable servitudes, grants and easements' submitted to the village, that an architectural committee would oversee this work." *Ferentchak*, 86 Ill.Dec. at 446, 475 N.E.2d at 825. One such covenant provided that the architectural committee had sole authority to review plans setting the finished ground elevation for foundations. The court concluded that the obligation to set foundation grade levels fell upon the developer and the committee, rather than upon the engineer. Hence, the court concluded that the contract imposed no duty on the engineer with respect to the plaintiff homeowners. Perhaps the true lesson of *Rankow* and *Ferentchak* is that a court is required to examine the contract in question to determine whether the contract creates a separate legal obligation. *See also Holubek v. City of Chicago*, 146 Ill.App.3d

815, 100 Ill.Dec. 370, 372, 497 N.E.2d 348, 350 (1986) (court examined contractor's contract with park district to determine whether contract created duty on contractor's part to maintain area where plaintiff was injured).

Having examined the contract in issue in this case, the court concludes that the contract imposed a duty on Equifax to accurately inspect the Dabelow dealership and thereafter correctly report the results of the inspection to GECC. Paragraph two of the contract requires such a conclusion. Paragraph two of the contract reads in part:

Whenever GECC requires Floor Plan Inspection Services, GECC shall forward to the appropriate Equifax Office written data sufficient for Equifax to conduct the Inspection. Upon receipt of the foregoing data by the appropriate Equifax Office representatives of Equifax shall conduct Floor Plan Inspection Services in accordance with Equifax Standard Operating Instructions....

Plaintiffs' Statement of Material Facts Which Require Denial of Defendant's Motion for Summary Judgment, Exhibit J, at ¶ 2. The contract expressly required performing on-site inspections verifying serial and model numbers, verifying payment status of units not physically inspected and the recording of odometer settings. Plaintiffs' Statement of Material Facts Which Require Denial of Defendant's Motion for Summary Judgment, Exhibit J, at ¶ 2(a)–(d). To the extent that GECC was required to establish this contractual duty in its pleadings, it has done so. GECC alleges that GECC and Equifax were in contractual privity. *See* Complaint, ¶¶ 9, 10. In Count II of the complaint (the negligence count), GECC alleges Equifax breached its tort duty to GECC by realleging the same conduct which forms the basis of the breach of contract in Count I.[8] GECC con-

---

8. Paragraph 28 realleges paragraph 24 of the complaint which states in part:

Equifax breached its Agreement with GE Capital by:

a) Failing to account for all missing vehicles at the Dabelow dealership;

b) Failing to follow written instructions agreed to by the parties for dealership inspections;

c) Failing to verify the existence of a Manufacturer's Statement of Origin for each unaccounted vehicle;

cludes that by breaching its agreement with GECC, Equifax "was negligent in providing business information and conducting the inventory inspection at the Dabelow dealership." Complaint, at ¶ 29.

 Furthermore, the court thinks it clear that Equifax owed a duty apart from its contract with GECC to provide information without negligence. The elements of a cause of action in negligent misrepresentation are fulfilled when (1) a defendant is under a duty to communicate accurate communication, (2) the defendant makes a false statement of material fact, (3) the defendant is negligent in ascertaining the truth or falsity of the statement, (4) plaintiff relies on the false statement and (5) plaintiff sustains damage as a result. *Board of Educ. v. A, C and S, Inc.*, 131 Ill.2d 428, 137 Ill.Dec. 635, 646, 546 N.E.2d 580, 591 (1989). Illinois courts imply a duty to communicate accurate communication in situations involving one who in the course of his business or profession supplies information for the guidance of others in their business relations with third parties. *Black, Jackson & Simmons Ins. Brokerage, Inc. v. International Business Machines Corp.*, 109 Ill.App.3d 132, 64 Ill.Dec. 730, 732, 440 N.E.2d 282, 284 (1982). *See also National Can Corp. v. Whittaker Corp.*, 505 F.Supp. 147 (N.D.Ill.1981); *Penrod v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Ill.App.3d 75, 24 Ill.Dec. 464, 385 N.E.2d 376 (1979). In its complaint, GECC states "Equifax is in the business of providing floor plan financing inspection services and *business information to lenders, such as GE Capital and GE Automotive, for inventory control and collection purposes.*" Complaint, ¶ 4 (emphasis added). Equifax admitted these facts in its answer with the qualification that these activities were not its sole business. Answer, ¶ 4; Plaintiffs' Statement of Material Facts Which Require Denial of Defendant's Motion for Summary Judgment, at ¶ 1. Moreover, it is clear that

Equifax knew it was providing information to GECC for GECC's use in its dealings with Transamerica. Equifax's representatives knew at the time they agreed to provide inspection services at the Dabelow dealership that GECC was purchasing the dealership floor plan portfolio from Transamerica. *See* Plaintiffs' Statement of Material Facts Which Require Denial of Defendant's Motion for Summary Judgment, Exhibit H, Marinaro deposition at 100–02; Exhibit I, Kulat deposition at 127.

The instant case may be distinguished from the decision in *August, Bishop & Meier, Inc. ("ABM") v. Premium Link, Ltd.*, 738 F.Supp. 1166 (N.D.Ill.1990). In *August, Bishop & Meier*, ABM contracted with Burger King Corporation to develop promotional materials. ABM recommended Premium Link to Burger King to manufacture the materials. Burger King then contracted with Premium Link to manufacture the materials. ABM did not contract with Premium Link. When Premium Link failed to manufacture the promotional materials in a timely manner, Burger King charged its losses to ABM. ABM sued Premium Link for negligently representing that it could adequately manufacture the desired materials and deliver them in a timely manner. *August, Bishop & Meier*, 738 F.Supp. at 1167–68. The district court dismissed ABM's suit as not stating a claim since ABM could not establish a duty owed by Premium Link to ABM. "[ABM] fails to allege ... that Premium Link owed it a duty to provide it with accurate information. Such a duty arises under Illinois law only when the defendant runs the risk of physical harm on account of negligent misrepresentation or is in the business of furnishing information." *August, Bishop & Meier*, 738 F.Supp. at 1169 (citing *A, C & S, Inc.*, 137 Ill.Dec. at 646–650, 546 N.E.2d at 591–595). ABM had not entered into a contract with Premium Link hence no duty

---

d) Failing to review the entire Manufacturer's Statement of Origin, including the front and reverse side, for each unaccounted vehicle;

e) Failing to verify physically the existence of motor vehicles at the Dabelow dealership;

f) Failing to verify that vehicles physically located on the Dabelow premises were, in fact, sold; and

g) Failing to identify and then notify GE Capital of the correct dollar amount of the collateral deficiency existing as of June 23, 1989.

arose as a part of a contractual relationship. Moreover, Premium Link was a manufacturer of tangible goods and not in the business of furnishing information; hence no duty arose to provide accurate information. The instant case contains both of these elements and, thus, is legally and factually distinct from the situation in *August, Bishop & Meier.*

For the same reason, Equifax's citation to *Album Graphics Inc. v. Beatrice Foods Co.,* 87 Ill.App.3d 338, 42 Ill.Dec. 332, 408 N.E.2d 1041 (1980) is also unpersuasive. In *Album Graphics,* the Illinois Appellate Court for the First District, in a case predating the Illinois Supreme Court's decision in *Moorman Mfg. Co. v. National Tank Co.,* discussed *infra* at 1441–1442, stated:

> In the present case, the parties are allegedly in privity of contract. Plaintiff asks us to recognize a cause of action in negligence for failure to perform duties that are essentially contractual duties and to allow it to seek damages that are essentially contract damages. Hence, plaintiff asks to recognize a tort action for breach of contract.

*Album Graphics,* 42 Ill.Dec. at 341, 408 N.E.2d at 1050. The *Album Graphics* court declined to allow plaintiff in that case to collect tort damages.

*Album Graphics* is unpersuasive to this court for two reasons. First, *Album Graphics* is factually distinguishable from the instant case. *Album Graphics* involved claims of breach of warranty and simple negligence and did not involve negligent misrepresentation by an entity in the business of supplying information for the guidance of others. Second, and more importantly, the decision in *Album Graphics* predated the Illinois Supreme Court's *Moorman* analysis. *Album Graphics* correctly predicted the *Moorman* court's rule that a plaintiff may not recover in tort for purely economic losses when a written contract establishes the rights and duties of the parties. What the *Album Graphics* court did not predict was the *Moorman* court's exceptions to the economic loss doctrine, significantly, the exception for negligent misrepresentation by one in the busi-

ness of supplying information for guidance of others in their business transactions. *Moorman,* 61 Ill.Dec. at 755, 435 N.E.2d at 452 (citing *Rozny v. Marnul,* 43 Ill.2d 54, 250 N.E.2d 656 (1969)). Hence, the *Album Graphics* court had no occasion to consider whether extra-contractual duties might exist in situations where contractual privity exists. More recent First District Appellate Court decisions have noted this distinction. *See Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.,* 224 Ill.App.3d 559, 166 Ill.Dec. 642, 656–59, 586 N.E.2d 600, 614–17 (1991) (citing *Album Graphics* but noting that an accounting firm which made negligent misrepresentations would fit within *Moorman* exception if other elements are present).

In sum, Equifax had a duty under the GECC–Equifax contract to provide GECC with accurate information in the floor plan inspections. Further, Equifax is in the business of furnishing information and therefore had a duty, independent of the GECC–Equifax contract, to GECC to provide accurate information after inspecting a dealership's floor plan. Having concluded GECC has a viable claim for negligent misrepresentation, the next step concerns whether this cause of action will survive under Illinois' doctrine regarding economic loss.

### b. *Equifax's assertion that GECC is not entitled to recover for economic loss*

■ As a general rule, Illinois law does not allow tort recovery for purely economic loss. *Gerdes v. John Hancock Mut. Life Ins. Co.,* 712 F.Supp. 692, 696 (N.D.Ill. 1989); *Moorman,* 61 Ill.Dec. at 753, 435 N.E.2d at 450. Economic loss has been defined as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *Moorman,* 61 Ill.Dec. at 752, 435 N.E.2d at 449, (citing Note, *Economic Loss in Products Liability Jurisprudence,* 66 Colum.L.Rev. 917, 918 (1966)). The *Moorman* court held that the remedy for economic loss lies in contract, not tort. *Moorman,* 61 Ill.Dec. at

753, 435 N.E.2d at 450.[9] GECC makes no claim of personal injury or damage to property. Hence, their claims are properly considered economic loss.[10]

■■■ The *Moorman* court recognized two exceptions to the general rule that the appropriate remedy for economic loss is contract, rather than tort. First, economic loss is recoverable for intentional misrepresentations. *Moorman*, 61 Ill.Dec. at 755, 435 N.E.2d at 452. Second, economic loss is recoverable for negligent misrepresentation made by one in the business of supplying information for the guidance of others in their business transactions. *Moorman*, 61 Ill.Dec. at 755, 435 N.E.2d at 452. The second exception, for negligent misrepresentations, applies to the present case. Two critical factors must be present to recover economic losses under the exception for negligent misrepresentations. *Gerdes*, 712 F.Supp. at 696. The first factor requires that the defendant be in the business of supplying information. The second factor requires that the defendant supply the information to guide others in their business relations with third parties. *Gerdes*, 712 F.Supp. at 696.

■■ Turning to the first factor, to determine whether a defendant is in the business of supplying information, the precise facts of the specific case must be analyzed. *Rankow*, 870 F.2d at 361; *Gerdes*, 712 F.Supp. at 697. The analysis focuses on the character of the information at issue in the particular case as well as the relation of the information to the business conducted. *Gerdes*, 712 F.Supp. at 697 (citing *Rankow*, 870 F.2d at 361). Courts have identified three different categories of businesses that supply information. *Gerdes*, 712 F.Supp. at 697. The first category consists of businesses that supply only non-informational goods or services. In these types of businesses any information supplied is incidental to the sale of the product. As a result, even when these types of businesses supply information during a business transaction, they do not meet the "in the business of supplying information" requirement. *Gerdes*, 712 F.Supp. at 697.[11] While Equifax admits that supplying business information is not its sole business, Equifax has not indicated to the court that it produces or sells any tangible or non-informational good that would place it in

**9.** The plaintiff in *Moorman* sought recovery from the defendant under the tort theories of strict liability, negligence and innocent misrepresentation. The plaintiff had purchased a grain-storage tank from the defendant, who had designed and manufactured the tank. After several years, a crack developed in the tank. Plaintiff sought recovery for the cost of repairs as well as loss of use of the tank. *Moorman*, 61 Ill.Dec. at 748, 435 N.E.2d at 445. The court determined that the compensation sought by the plaintiff was compensation for economic loss. According to the court, the Uniform Commercial Code provided the mechanism for the recovery of economic losses. *Moorman*, 61 Ill. Dec. at 755, 435 N.E.2d at 452. The court concluded that the remedy for economic loss was best controlled by contract law. As a result, the court held that the plaintiff could not recover for economic loss under strict liability, negligence, or innocent misrepresentation.

**10.** Plaintiffs apparently concede this point when they argue that "[t]he negligence counts are based on a well-known exception to the rule set out in *Moorman*...." Plaintiffs' Memorandum in Opposition to Defendant's Motion for Partial Summary Judgment, at 9 [hereinafter Plaintiffs' Memorandum in Opposition].

**11.** *See Black, Jackson & Simmons Ins. Brokerage, Inc.,* 64 Ill.Dec. at 731, 440 N.E.2d at 283.

In *Black*, a computer manufacturer who recommended the purchase of data processing software supplied another defendant was found not to be in the business of supplying information. The plaintiff purchased an IBM computer and related IBM software based upon the defendant's representations that this system would be adequate to serve the plaintiff's business needs. *Black*, 64 Ill.Dec. at 731, 440 N.E.2d at 283. In fact, the purchased system was both smaller and slower than represented by the defendant. In addition, the system lacked an appropriate interface between the electronic hardware and the software. The plaintiff brought suit, seeking the recovery of economic losses resulting from the inadequate system. The court found that the defendant was not in the business of supplying information. *Black*, 64 Ill.Dec. at 732, 440 N.E.2d at 284. The court found that defendants merely sold merchandise (a computer and software) to the plaintiff and that any information provided by the defendants was incidental to the transaction. *See also Navistar Int'l Corp. v. Hagie Mfg. Co.,* 662 F.Supp. 1207 (N.D.Ill.1987) (sellers of crop sprayers not in business of supplying information); *National Can Corp.,* 505 F.Supp. at 150 (chemical compound manufacturer not in business of supplying information).

the category of supplying non-informational goods.

The second category consists of businesses which supply information as well as non-informational goods or services. The critical question for businesses in this category is whether the information is an important part of the product offered. These businesses will be deemed to be in the business of supplying information if the information furnished along with non-informational goods or services is central to the business transaction. *Gerdes,* 712 F.Supp. at 698. Banks and financial service companies often are held to fall within this category since the information provided is central to the investment security product sold. *Gerdes,* 712 F.Supp. at 698. Financial services provided by banks and stockbrokers present a uniquely difficult problem due to the fine line between supplying financial information and completing actual financial transactions. *See Rankow,* 870 F.2d at 364; *compare National Union Fire Ins. Co. of Pittsburgh v. Continental Illinois Corp.,* 654 F.Supp. 316, 318 (N.D.Ill.1987) (bank cannot be categorized as in the business of supplying information) *with Guaranty Bank & Trust Co. v. Reyna,* 51 Ill.App.2d 412, 201 N.E.2d 144, 149–50 (1964) (bank which provided incorrect information held to meet the business of supplying information test).

The final category are those businesses that provide a product which consists solely of information. In this scenario, the business meets the requirement of being "in the business of supplying information." *Gerdes,* 712 F.Supp. at 698; *see, e.g., Penrod,* 24 Ill.Dec. at 469, 385 N.E.2d at 381 (stockbroker in business of providing information); *Duhl v. Nash Realty, Inc.,* 102 Ill.App.3d 483, 57 Ill.Dec. 904, 913, 429 N.E.2d 1267, 1276 (1981) (real estate broker in business of providing information); *Perschall v. Raney,* 137 Ill.App.3d 978, 92 Ill.Dec. 431, 434–35, 484 N.E.2d 1286, 1289–90 (1985) (termite inspector in business of providing information).

In the present case it is undisputed that Equifax is in the business of providing floor plan financing inspection services and

business information to lenders. Equifax supplies business information to its customers for inventory control and collection purposes. The court believes the information supplied by Equifax was central to the business transaction between Equifax and GECC. Equifax asserts that supplying information is not its sole business. However, in light of *Rankow,* this is not a compelling argument. The information need not comprise the entire business of the defendant. It must be central to the business transaction between the parties. In the present case, the information supplied to GECC was the essence of the business transaction between GECC and Equifax. GECC contracted with Equifax for the purpose of obtaining information about dealer inventories. Equifax supplied the service of conducting the inventory. This service is meaningless without the information gathered in the ensuing inventory. As a result, we find that Equifax was in the business of supplying information.

The second factor requires that the defendant supply the information to guide others in their business relations with third parties. *Gerdes,* 712 F.Supp. at 696. The third parties must be parties other than the defendant. For example, this requirement was not met when a defendant supplied a plaintiff with information that guided plaintiff in the purchase of defendant's own computer products. *See Black, Jackson & Simmons Ins. Brokerage, Inc.,* 64 Ill.Dec. at 732, 440 N.E.2d at 284. In the present case, the information supplied by Equifax was used by GECC in its business dealings with a third party. The information was used by GECC in its business dealings with Transamerica Commercial Financial Corporation, I. GECC used the inventory inspection report provided by Equifax to confirm the status of the Dabelow dealership floor plan. In order for GECC to exert its contractual rights under the purchase agreement with Transamerica Commercial Financial Corporation, I, GECC needed an accurate report of floor plan loan status at the dealerships GECC was purchasing.

Equifax argues that the exception found in *Moorman* for negligent misrepresenta-

tion does not apply when an alternative contractual remedy is available. Equifax makes this argument in reliance on two Illinois Appellate Court decisions: *Bates & Rogers Constr. Corp. v. North Shore Sanitary Dist.*, 128 Ill.App.3d 962, 84 Ill.Dec. 149, 471 N.E.2d 915 (1984) and *Oldenburg v. Hagemann*, 159 Ill.App.3d 631, 111 Ill. Dec. 329, 512 N.E.2d 718 (1987). The court finds neither of these cases persuasive. *Bates* did not involve the negligent misrepresentation exception to the *Moorman* rule involved in the instant case. *Bates* involved a suit by a contractors against an architect/engineer based upon the architect/engineer's allegedly negligent design of portions of a sewage treatment plant. The *Bates* court denied the contractors a cause of action in tort because the contractors' damages were to the "expectation interests" of the parties. *Bates & Rogers Constr. Corp.*, 84 Ill.Dec. at 158, 471 N.E.2d at 924. "In our view, this is clearly an interest which is meant to be protected by the law of contract since each party to a construction contract impliedly warrants not to do anything to hinder the performance of the other party." *Bates & Rogers Constr. Corp.*, 84 Ill.Dec. at 158, 471 N.E.2d at 924.

The *Bates* court was certainly aware of the *Rozny* exception to the *Moorman* economic loss doctrine. The *Bates* court states:

> The non-critical mention of *Rozny* in the course of the Supreme Court's *Moorman* opinion, in addition to his view that that decision was the result of the court having applied an implicit tort analysis to the facts of that case, has caused at least one author to conclude that economic loss is recoverable in tort "where public policy considerations warrant the imposition of a social duty", and where there is "a showing of harm beyond mere disappointed expectations, as in *Rozny.*" (Bertschy, *Negligent Performance of Service Contracts and the Economic Loss Doctrine*, 17 J. MAR[SHALL L.REV.] 249, 269 (1984).

*Bates*, 84 Ill.Dec. at 153, 471 N.E.2d at 919. When read in the context of this comment, the court understands the *Bates* court's

decision to deny the plaintiffs a cause of action in tort as founded not on the basis of the parties' contractual privity (as advanced by Equifax), but because there was no showing of harm beyond mere disappointed expectations. In the instant case, while the plaintiffs' expectation interests are clearly involved, GECC has shown an interest beyond that protected by the GECC–Equifax contract. Since, as we have seen, Equifax may be considered in the business of providing information to others for use in transactions with third parties, an additional duty is imposed, independent of the parties' contract. Hence, the decision in *Bates* may be distinguished.

*Oldenburg* involved a suit between a contractor, a subcontractor and an architect who were acting in concert to construct a building. Before installing ceiling tile, the subcontractor presented the tile to the architect for his approval. After the installation, the contractor informed the subcontractor that the tile was substandard and would have to be replaced. *Oldenburg*, 111 Ill.Dec. at 338, 512 N.E.2d at 727. The subcontractor sought recovery from the architect for the alleged negligent representations regarding the ceiling tile. According to the court, the plaintiff's complaint sufficiently alleged that the architect was a supplier of information and that the architect made negligent representations. *Oldenburg*, 111 Ill.Dec. at 338, 512 N.E.2d at 727. Nevertheless, the court denied the plaintiff subcontractor a tort recovery from the architect, because a contractual remedy was available for the subcontractor against the contractor. The court found that no contract action was available to the subcontractor against the architect. *Oldenburg*, 111 Ill.Dec. at 338, 512 N.E.2d at 727. The court found that the contractual relationship between the contractor and subcontractor provided the subcontractor with an adequate remedy, under the contract, for his economic damages. *Oldenburg*, 111 Ill. Dec. at 338, 512 N.E.2d at 727.

In the present case, Equifax seeks to expand the result in *Oldenburg* into a general rule that tort recovery for negligent misrepresentation by an information pro-

vider is allowed only when no contractual remedy is available. The Illinois Supreme Court, however, has not adopted this rule. In a 1990 opinion, *2314 Lincoln Park West Condominium Ass'n. v. Mann, Gin, Ebel, & Frazier, Ltd.*, 136 Ill.2d 302, 144 Ill.Dec. 227, 230, 555 N.E.2d 346, 349 (1990), the court restated the exception to the *Moorman* rule for negligent misrepresentation. The court stated that economic losses for negligent misrepresentation are recoverable when "one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations." *2314 Lincoln Park West Condominium Ass'n.*, 144 Ill. Dec. at 230, 555 N.E.2d at 349 (citing *Moorman*, 61 Ill.Dec. at 755, 435 N.E.2d at 452). The Illinois Supreme Court did not alter the exception by limiting recovery for economic loss for negligent misrepresentations by an information provider to cases where there is an absence of a contractual remedy.[12] We think it clear that had the Illinois Supreme Court wished to adopt the approach taken by the appellate court in *Oldenburg*, it could have done so in either *2314 Lincoln Park West Condominium Ass'n.* or *Collins.* The Illinois Supreme Court has declined to do so; this court may not expand Illinois law beyond that authorized by the Illinois Supreme Court.

Summing up, GECC has sufficiently established Equifax's duty to GECC to provide accurate information, and thus GECC's Count II negligent misrepresentation claim may stand. Equifax has not shown that the *Moorman* rule of economic loss would prevent GECC's recovery if it prevails on Count II. Accordingly, Equifax's motion for summary judgment on Count II will be denied.

### 2. Counts III and IV—Equifax's Liability to GECCAF

In Count III of the complaint, GECCAF alleges that it is a third party beneficiary of the GECC–Equifax contract. The law regarding third party beneficiaries to a contract is well established in Illinois and this circuit. Under Illinois law, parties to a contract are presumed to bargain for themselves and only incidently for third persons. *Hunter v. Old Ben Coal Co.*, 844 F.2d 428, 432 (7th Cir.1988) (citing *Waterford Condominium Ass'n v. Dunbar Corp.*, 104 Ill.App.3d 371, 60 Ill.Dec. 110, 432 N.E.2d 1009 (1982)). Those parties not in privity to a contract may only sue to enforce the contract when the language of the contract clearly manifests an intent by the contracting parties to confer a direct benefit on the third party. *Hunter*, 844 F.2d at 432 (citing *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 178 N.E. 498 (1931) and *Altevogt v. Brinkoetter*, 85 Ill.2d 44, 51 Ill.Dec. 674, 421 N.E.2d 182 (1981)). "A third party's right to enforce a contract 'rests upon the liability of the promisor, and this liability must affirmatively appear from the language of the instrument when properly interpreted and construed.'" *Hunter*, 844 F.2d at 432 (quoting *Carson Pirie Scott*, 178 N.E. at 501).

Two methods may be used to affirmatively identify a party as a third party beneficiary of a contract. First, the contracting parties may expressly name a party as a beneficiary to the contract. *155 Harbor Drive Condominium Ass'n v. Harbor Point Inc.*, 209 Ill.App.3d 631, 154 Ill.Dec. 365, 375, 568 N.E.2d 365, 375 (1991). Such a provision cannot be implied because "'there is a strong presumption that parties to a contract intend that the contract's provisions apply to *only* them

**12.** The Illinois Supreme Court's most recent definition of the exception to the *Moorman* rule for negligent misrepresentation was stated in *Collins v. Reynard*, No. 70325, slip op. at 3, 1991 WL 220561, *2 (Oct. 31, 1991). According to *Collins*, economic losses are recoverable when "one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representa-

tions." *Collins*, slip op. at 3, 1991 WL 220561, *2 (citing *Moorman*, 61 Ill.Dec. at 755, 435 N.E.2d at 452). To date, the Illinois Supreme Court has not limited recovery for economic loss for negligent misrepresentations by an information provider to cases where there was an absence of a contractual remedy. It must be noted, however, that *Collins* is currently being reconsidered by the Illinois Supreme Court.

and not to third parties. In order to overcome that presumption, the implication that the contract applies to third parties must be so strong as to be practically an express declaration.'" *155 Harbor Drive Condominium Ass'n,* 154 Ill.Dec. at 375, 568 N.E.2d at 375 (emphasis in original) (quoting *Ball Corp. v. Bohlin Building Corp.,* 187 Ill.App.3d 175, 134 Ill.Dec. 823, 824, 543 N.E.2d 106, 107 (1989)).

■ GECCAF has failed to point to any language in the contract between GECC and Equifax which expressly declares GECCAF to be a beneficiary of that contract. Nowhere in the contract do we find the words "General Electric Capital Commercial Automotive Finance, Inc." or its acronym GECCAF, or even GECCAF's predecessor's name Transamerica. This is not surprising considering that GECCAF did not come into existence until sometime after GECC and Equifax entered into their contract.[13] Moreover, having closely examined the language of the GECC–Equifax contract, the court concludes that none of the provisions of the contract even imply an intent by the parties to benefit GECCAF.

The second means by which parties to a contract may indicate an intent to benefit a third party does not require the contracting parties to specifically identify the third party.

It is not necessary that a contract for the benefit of an third party identify him by name. The contract may define a third party by description of a class, and it is sufficient if the plaintiff may be identified at the time of performance is due as a member of the class intended to be benefited. Restatement (Second) of Contracts sec. 139 (1981); 4 Corbin, Contracts sec. 781 (1951); 2 Williston, Contracts sec. 356A (3d ed. 1959).

*Altevogt,* 51 Ill.Dec. at 679, 421 N.E.2d at 187. For example, this practice may be used by a seller intending to benefit an as yet unknown purchaser. *Compare Altevogt,* 51 Ill.Dec. at 679, 421 N.E.2d at 187 (developer who contracted with builder to construct houses in subdivision for sale to general public intended to benefit ultimate purchaser) *with People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.,* 78 Ill.2d 381, 36 Ill.Dec. 338, 400 N.E.2d 918 (1980) (corporation's contract with builder to construct public building expressly identified state agency as beneficiary of contract); *see also Hunter,* 844 F.2d at 432–33 (option agreement entered into by corporation held to intend to benefit shareholders who were defined as "optioners (members of the association)").

In contrast to the facts in *Hunter* and *Altevogt,* the GECC–Equifax contract does not identify a class intended to be benefitted by the contract. GECCAF argues that "[a]lthough 'the beneficiary must be identified before he has enforceable rights' it is 'not necessary that he should be identified or identifiable at the time that the contract is made. It is enough that he be identified at the time performance is due.'" Plaintiff's Memorandum in Opposition, at 13 (quoting *Avco Delta Corp. v. United States,* 484 F.2d 692, 702 (7th Cir.1973), *cert. denied sub nom., Canadian Parkhill Pipe Stringing, Ltd. v. United States,* 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 490 (1974)). GECCAF's quotation from *Avco* is correct but out of date. Fifteen years after *Avco,* the Seventh Circuit adopted in *Hunter* the formulation set forth by the Illinois Supreme Court in *Altevogt* quoted *supra.* The *Hunter/Altevogt* rule requires the contracting parties to "define a third party by description" at the time of contracting so that the beneficiary can be identified at the time of performance. Another case cited by GECCAF, *Organization of Minority Vendors, Inc. v. Illinois Cent. Gulf Railroad,* 579 F.Supp. 574, 597 (N.D.Ill.1983), follows the *Altevogt* formulation by requiring "the plaintiff [to] be identified at the time performance is due as

---

**13.** GECC and Equifax entered into their contract in 1986. The agreement was revised in 1988. GECCAF was not incorporated until October 27, 1987. Plaintiffs' 12(n) Statement in *Response to Defendant's Statement of* "Material Undisputed Facts", at ¶ 9. GECC's purchase of Transamerica, which eventually resulted in Transamerica being renamed GECCAF, did not occur until June 1, 1989. Complaint, ¶ 3.

a member of the class intended to be benefitted."[14] GECCAF can not escape the fact that the GECC–Equifax contract does not define a class of future beneficiaries of the contract.

GECCAF's final argument is that the question of whether GECCAF is a third party beneficiary is a question of fact, citing *May's Family Centers, Inc. v. Goodman's, Inc.*, 571 F.Supp. 1012, 1015 (N.D.Ill.1983) and *Securities Fund Services, Inc. v. American Nat'l Bank & Trust Co.*, 542 F.Supp. 323, 329 (N.D.Ill.1982). These cases stand for the proposition that the question of whether a contractual benefit is direct or incidental depends on the contracting parties intent and must be determined on a case-by-case basis. This is so because the contracting parties intent must be determined from the text of the contract itself. Under Illinois law, the chief objective in construing contracts is to give effect to the intent of the parties. *Wikoff v. Vanderveld*, 897 F.2d 232, 238 (7th Cir.1990) (citing *Braeside Realty Trust v. Cimino*, 133 Ill.App.3d 1009, 89 Ill.Dec. 25, 27, 479 N.E.2d 1031, 1033 (1985)). This intent is determined by viewing the language of the contract as a whole. *Wikoff*, 897 F.2d at 238 (citing *Braeside Realty Trust*, 89 Ill.Dec. at 27, 479 N.E.2d at 1033). Thus, the inquiry into the parties' intent starts with the contract. *La Salle Nat. Bank v. Service Merchandise Co.*, 827 F.2d 74, 78 (7th Cir.1987).

When interpreting a contract under Illinois law, the court's first decision is whether the contract is ambiguous. This is a question of law. *Metalex Corp. v. Uniden Corp. of America*, 863 F.2d 1331, 1333 (7th Cir.1988) (citing *La Salle Nat. Bank*, 827 F.2d at 78). If the court concludes that the contract is unambiguous, the court must interpret the contract and state the meaning of the contract. This, too, is a question of law. *La Salle Nat. Bank*, 827 F.2d at 78. If the court concludes that the contract is ambiguous, the

contract's meaning becomes a question of fact. *La Salle Nat. Bank*, 827 F.2d at 78.

As a result, summary judgment is particularly appropriate in cases involving the interpretation of contracts. *Metalex*, 863 F.2d at 1333. Summary judgment is proper where there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56. When a contract is unambiguous, there are no genuine issues of material fact on the interpretation of the contract. Hence, the interpretation of the contract is a question of law for the court and summary judgment may be granted. *Metalex*, 863 F.2d at 1333.

A contract provision is ambiguous if it is subject to two reasonable interpretations. *Ooley v. Schwitzer Div., Household Mfg. Inc.*, 961 F.2d 1293, 1298 (7th Cir.1992); *Metalex*, 863 F.2d at 1334 (citing *Lenzi v. Morkin*, 116 Ill.App.3d 1014, 72 Ill.Dec. 414, 416, 452 N.E.2d 667, 669 (1st Dist.1983)); *see generally* II E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS § 7.12a (1990) (the mere fact that each party—or each party's lawyer—advances a different interpretation will not suffice, each interpretation must be reasonable). "[I]t is not ambiguous if the court can determine without any guide other than a knowledge of the simple facts on which from the nature of the language in general, its meaning depends." *Reichelt v. Urban Inv. & Dev. Co.*, 611 F.Supp. 952, 953 (N.D.Ill.1985) (citing *Public Relations Board v. United Van Lines*, 57 Ill.App.3d 832, 15 Ill.Dec. 381, 382, 373 N.E.2d 727, 728 (1st Dist.1978)). The mere fact that the parties do not agree upon the proper construction does not render a contract ambiguous.

GECCAF's reference to paragraph 10 of the GECC–Equifax contract is insufficient to create a question of fact precluding summary judgment. Paragraph 10 states

---

**14.** GECCAF selectively and misleadingly quotes from *Minority Vendors*. Quoting *Minority Vendors*, GECCAF states: " '[A] contract need not be entered into for the sole benefit of a third-party in order to confer third-party beneficiary rights

on that party." Plaintiff's Memorandum in Opposition, at 13. GECCAF neglects to include the following sentence in *Minority Vendors* which clearly states that a third-party beneficiary may be identified by use of a class, citing to *Altevogt*.

in part: "This agreement shall be binding on the successors and assigns of the parties, but no assignment by Equifax shall be binding on GECC." Plaintiffs' Statement of Material Facts Which Require Denial of Defendant's Motion for Summary Judgment, Exhibit J, at ¶ 10. The court does not interpret this clause as intending to create a class of intended beneficiaries. GECCAF's citation to *May's* for the proposition that an assignment clause in a contract automatically makes a potential assignee a third party beneficiary is incorrect. First, *May's* must be limited to its rather narrow facts. *May's* involved a lessee suing a lessor and the applicability of an assignment clause in the lease to successive lessees.[15] More importantly, the contract in *May's* does not even remotely resemble the GECC–Equifax contract. The *May's* contract specifically provided for successive assignments and contained language obligating the promisor (lessor) to each proposed assignee. The district court found this language indicative of an intent by the original contracting parties to benefit the later assignees. Here, we have no specific promise to assignees of the GECC–Equifax contract. The clause in the GECC–Equifax contract, which is a typical assignment clause, merely allows GECC to assign its rights to the contract to another party. The clause is certainly not the type of declaration necessary to indicate a class of beneficiaries to which Equifax expressly promised performance of it duties under the contract.[16] GECCAF has not shown that the GECC–Equifax contract was intended to directly benefit GECCAF. Accordingly, summary judgment is appropriate in Equifax's favor. Summary judgment is entered in Equifax's favor on Count III.

Equifax states in its memorandum in support of its motion for summary judgment that because GECCAF is not a third-party beneficiary of the contract, Equifax is entitled to judgment on Counts III *and* IV. Count IV, as we have noted above, simply restates GECC's negligent misrepresentation claim but extends it to GECCAF. It does not follow, however, that because GECCAF is not a third-party beneficiary of the GECC–Equifax contract, GECCAF might not be able to proceed on a tort theory of recovery. An action in tort, as we have seen, does not require contractual privity. Since GECCAF alleged negligent misrepresentation,[17] the question becomes whether Equifax owed a duty to provide accurate information to both GECC and a third-party, GECCAF.

The answer to this question requires an analysis of the same principles raised in Justice Cardozo's famous opinion in *Ultramares Corp. v. Touche, Niven & Co.*, 255 N.Y. 170, 174 N.E. 441 (1931), which held an auditing firm which negligently certified an inaccurate audit of an insolvent firm was not liable to a third party who, in reliance on the audit, loaned money to the insolvent firm. The Illinois Supreme Court rejected this approach, at least in part, in *Rozny v. Marnul*, 250 N.E.2d 656, 663 (Ill.1969), by holding that a surveyor, who negligently prepared a survey requested by a developer, was liable to a third party who had relied upon the survey. The *Rozny* court circumscribed the scope of its holding by emphasizing facts such as the surveyor made an "absolute guarantee for accuracy" and that very few people would rely on the survey. *Rozny*, 250 N.E.2d at 663. Later Illinois court decisions have narrowed the scope of liability further for

**15.** Even if the facts in *May's* were similar to the facts of the instant case, the court would not be bound to follow *May's*. As noted *supra*, this type of an inquiry is specific to the contract involved. In other words, a case-by-case approach must be used.

**16.** GECCAF also posits that the question of whether GECC assigned its contract to GECCAF is also a question of fact thus precluding summary judgment. Plaintiffs' Memorandum in Opposition, at 14. GECCAF has not produced

any specific facts supporting such a claim and has therefore not raised a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553 (a party opposing a motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial).

**17.** The allegations of GECCAF's Count IV claim of negligent misrepresentation are identical to GECC's Count II claim of negligent misrepresentation.

negligent misrepresentation. The Seventh Circuit noted this trend, stating "[the Illinois decisions] hold that 'one who in the course of his business or profession supplies information for the guidance of others in their business transactions' is liable for negligent misrepresentations that induce detrimental reliance." *Greycas, Inc. v. Proud,* 826 F.2d 1560, 1565 (7th Cir.1987), *cert. denied,* 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 862 (1988). Thus, for Equifax to be liable to GECCAF, GECCAF must show that Equifax is in the business of providing information for the guidance of others for use in their business transactions and that GECCAF detrimentally relied upon the information provided by Equifax.

With this standard in mind, it becomes clear that Equifax may not be held liable to GECCAF for allegedly negligently misrepresenting the status of the Dabelow dealership in its report. While we have found that Equifax is in the business of providing information for the guidance of others, clearly GECCAF has not shown that it relied on Equifax's representations to its detriment. The first bar to Equifax's liability is that GECCAF did not even exist at the time Equifax submitted its report. GECCAF has also failed to show in what manner GECCAF relied upon the Equifax report once GECCAF came into existence. Second, it is abundantly clear from the record before the court that Equifax prepared the inspection report on the Dabelow dealership for GECC's use in its business transaction with Transamerica. What GECCAF has not shown, and what requires judgment in Equifax's favor on Count IV, is any indication that GECC would pass on the information contained in the Dabelow dealership report to GECCAF, and that GECCAF relied on the information to GECCAF's detriment. GECC claims that "it relied upon the information that Equifax provided to guide it in its business relationships with dealership including the Dabelow dealership...." and "to guide [it] in connection with its business transactions

with Transamerica." Plaintiffs' Statement of Material Facts Which Require Denial of Defendant's Motion for Summary Judgment, ¶¶ 14, 15. Nowhere in plaintiffs' filings is the same claim made for GECCAF. GECCAF has failed to put forth any evidence supporting the existence of a duty on Equifax which would support GECCAF's claim of negligent misrepresentation. Summary judgment on Count IV in Equifax's favor is therefore appropriate.

C. Equifax's and GECC's [18] Cross-Motions for Partial Summary Judgment

■ Equifax and GECC move for partial summary judgment based upon an alleged contractual limitation on damages. Paragraph four of the contract between GECC and Equifax states:

> If a loss is sustained by GECC from a dealer caused substantially by the negligent or willful acts or omissions of the employee of Equifax while in the course of providing service under this agreement and in the scope of their employment, Equifax shall be responsible, on the units involved, for the remaining balance and for interest at the legal rate from the date of the inspection which produced the discrepancy. Such liability of Equifax is limited to that based on material discrepancies found by GECC which are based on Equifax's failure to follow specific printed instructions sent with the inquiry request for inspections (Customer Specific Instructions). Such discrepancies shall be reported by GECC to Equifax within either 45 days after the discovery by GECC of the discrepancy or within six months of the date of the inspection which initially produced the discrepancy, whichever is earlier. The foregoing obligation of Equifax to assume certain liabilities is contingent on GECC mitigating or minimizing any damage or loss by pursuing reasonably available legal remedies. Equifax's liability as described in this section shall not be affected by the cancellation or termi-

---

**18.** Since, by reason of the foregoing analysis, GECCAF will no longer be a party to this suit, the court now refers to GECC only.

nation of this Agreement, but such liability shall not be extended or varied by this paragraph from that set out elsewhere in the Agreement. All Equifax Floor Plan Inspections shall be covered by Fidelity Bond Insurance.

We consider paragraph four under the same criterion as discussed *supra.* If the language of paragraph four is unambiguous, we may construe its meaning as a matter of law and summary judgment is appropriate. If the language is ambiguous, the meaning of the contract is a question for the jury.

Equifax's argument regarding paragraph four is simple. Equifax claims that if it failed "to follow GECC's inspection procedures and ... vehicles [were] misreported, resulting in 'material discrepancies' in the inspection report, Equifax's liability is limited to the outstanding balance owed to GECC by the dealer on the misreported vehicles." In other words, "if Equifax misse[d] a vehicle, Equifax pays for it." Defendant's Memorandum in Support of Summary Judgment, at 3. Essentially, Equifax's position is that no matter what theory GECC proceeds under, whether it be tort or contract, paragraph four limits Equifax's total liability. GECC, of course, reads the contract differently. GECC claims that paragraph four limits only tort damages, but does not address contract damages. Alternatively, GECC suggests that even if paragraph four does apply to contract damages, the language does not unambiguously limit GECC's consequential damages.

GECC concedes that paragraph four limits its tort damages.[19] The question becomes, then, does paragraph four limit GECC's contract damages, and if so, how are these damages limited. GECC contends that the language of paragraph four clearly pertains only to Equifax's tortious acts. GECC points to language in paragraph four which sets forth a state of mind requirement necessary to incur liability in tort. Paragraph four states liability will be limited only when "a loss is ... caused

substantially by *negligent* or *willful* acts or omissions of the employee of Equifax...." (emphasis added) GECC further notes that liability will be limited under the paragraph only when the employee is "in the course of providing service under the Agreement and in the scope of their employment." GECC argues that the "scope of employment" concept normally relates only to a master's liability for the torts of his servants under the doctrine of respondeat superior.

The court believes paragraph four clearly was not intended by the contracting parties to relate to contract damages. There are several unmistakable reasons for this conclusion. First, as GECC suggests, much of the language in paragraph four is couched in tort concepts. Second, the internal structure of the paragraph also supports a reading that the paragraph limits only tort damages. As we have noted, the first sentence of the paragraph clearly defines the limitation in terms of tort concepts. The second sentence begins "[s]uch liability" referring to the liability established in the first sentence. The second sentence goes on to require any liability established in sentence one to be based on "material discrepancies found by GECC which are based upon Equifax's failure to follow specific printed instructions...." At first glance, the second sentence might be read to establish a contract standard by requiring a "material" breach or discrepancy. This reading must be rejected, however, since the parties clearly attempted to relate the first sentence with the second by beginning the sentence "such liability."

 Third, paragraph four is significant in what it does not say. The parties have conclusively chosen not to limit contract liability by nowhere mentioning the concept of "contract" or "breach." A basic principle of contract law is that parties may expressly agree in the contract to an exclusive remedy that limits their rights, duties, and obligations. The contract, however, must clearly indicate that the parties intend the stipulated remedy to be exclusive. *Board of Regents v. Wilson*, 27 Ill.App.3d 26, 326 N.E.2d 216, 220 (1975). Parties are

---

**19.** Indeed, GECC's argument in this regard is in the section of its brief entitled "Paragraph 4 Is

Simply a Limitation On Tort Liability." Plaintiffs' Memorandum in Opposition, at 2.

not required to state in the contract all of the remedies which the law permits them to pursue. Furthermore, inclusion in a contract of a specific provision for one remedy does not preclude the parties from seeking other legal remedies. *Brian McDonagh v. Moss*, 207 Ill.App.3d 62, 151 Ill.Dec. 888, 890, 565 N.E.2d 159, 161 (1st Dist.1990).[20] The converse is also true: where a party seeks to limit one remedy, it does not follow that it intends to limit other unmentioned remedies in a similar fashion. By not explicitly stating a limitation in the common terms of contract, we may conclude that the parties' intent was not to limit GECC's contract remedies.[21]

 One last point deserves mention. In GECC's response to Equifax's motion for summary judgment, GECC argues that if Equifax is found liable in either tort or breach of contract, GECC's damages must be computed based upon every automobile listed on the Dabelow dealership inventory sheet. Plaintiffs' Memorandum in Opposition, at 9. In other words, according to GECC, Equifax will not only be liable for the value of the cars allegedly misreported, but also for the value of the more than 100 other cars listed on the inventory sheet. GECC bases its claim on the language in paragraph four which states that "Equifax shall be responsible, *on the units involved,* for the remaining balance and for interest at the legal rate from the date of the inspection which produced the discrepancy." (emphasis added).

GECC's argument is disingenuous and unsupported by the language of paragraph four. Unquestionably, the intent of paragraph four is to limit Equifax's liability to only those vehicles misreported, *i.e.* the "units involved." Of Equifax's liability on those automobiles, "such liability ... is limited to that based on material discrepancies found by GECC which are based on Equifax's failure to follow specific printed instructions sent with the inquiry request for instructions." GECC's interpretation of the words "units involved" would clearly expand Equifax's liability beyond any reasonable construction of the contract. Such a construction does not comport with the court's construction of paragraph four as a partial "limit" on Equifax's liability.

The court finds paragraph four an unambiguous and clearly intentioned limitation on GECC's tort damages only. Paragraph four does not limit GECC's contract damages. GECC's motions for partial summary judgment on Count I will be granted in part. To the extent that Equifax's motion for partial summary judgment sought to limit Equifax's contract liability to the outstanding on the nine misreported vehicles, Equifax's motion will be denied.

### D. GECC's Motion to Strike Equifax's Affirmative Defenses

GECC moves to strike Equifax's First and Fifth Affirmative Defenses. Equifax's

**20.** In *Brian McDonagh,* the court concluded that a liquidated damages provision in the parties' agreement was not an exclusive remedy. The court found no showing that the provision was intended to preclude injunctive relief in the event of a breach. *Brian McDonagh,* 151 Ill. Dec. at 889, 565 N.E.2d at 160. According to the court, had the parties intended that the provision preclude injunctive relief, they could have explicitly provided for this. Alternatively, they could have specifically provided that, in the event of a breach, liquidated damages were to be the sole remedy. *Brian McDonagh,* 151 Ill. Dec. at 889, 565 N.E.2d at 160.

**21.** Other language contained in paragraph four does not contradict the conclusion that paragraph four limits only tort liability. The fourth sentence in the paragraph four requires GECC to mitigate or minimize any damage or loss by pursuing reasonably available legal remedies.

Mitigation, while most commonly viewed as a contract principle, "applies in virtually every type of case in which the recovery of a money judgment or award is authorized." *Merrill Lynch, Pierce Fenner & Smith, Inc. v. Devon Bank,* 123 F.R.D. 569, 573 (N.D.Ill.1988). Hence, it cannot be said that the insertion of the word mitigation requires the court to construe paragraph four as affecting GECC's contract remedies.

Similarly, language in the contract outside of paragraph four does not contradict the conclusion that paragraph limits only tort liability. For example, paragraph five of the contract designates paragraph four an "indemnification provision." Indemnification, like mitigation, applies in both tort and contract situations as a means of securing one against loss, regardless of the source of that loss. *See City of Marshall v. City of Casey,* 177 Ill.App.3d 1065, 127 Ill.Dec. 292, 294, 532 N.E.2d 1121, 1123 (1989).

**1452**

First Affirmative Defense states that GECC's complaint fails to state a claim because Equifax owes no extra-contractual duty to GECC and because GECC's damages are for economic loss and thus not recoverable in tort. GECC's Fifth Affirmative Defense essentially states that Equifax's total liability to GECC is limited by paragraph four of the GECC–Equifax contract. GECC's motion is moot as a result of the court's disposition of the parties' summary judgment motions.

### III. CONCLUSION

For the reasons set forth above, Equifax's motion for summary judgment on Count II is DENIED. Equifax's motion for summary judgment on Counts III and IV is GRANTED. Judgment is entered on Counts III and IV of the complaint in favor of Equifax Services, Inc. and against General Electric Capital Commercial Automotive Finance, Inc. Equifax's motion for partial summary judgment on Count I is DENIED. GECC's motion for partial summary judgment on Count I is GRANTED.

SO ORDERED: