John HUNTER and Laura Snodsmith,
Plaintiffs–Appellants,

v.

OLD BEN COAL COMPANY,
Defendant–Appellee.

No. 87–1360.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 30, 1987.

Decided April 6, 1988.

John T. Gadau, Zimmerly, Gadau, Selin & Otto, Champaign, Ill., for plaintiffs-appellants.

Mark M. Pierce, Old Ben Coal Co., Law Dept., Cleveland, Ohio, for defendant-appellee.

Before FLAUM, EASTERBROOK, and MANION, Circuit Judges.

FLAUM, Circuit Judge.

The plaintiffs, John Hunter and Laura Snodsmith, filed suit on May 6, 1985 seeking specific performance of a contract between Old Ben Coal Company ("Old Ben"), the defendant, and the Dalgren Moores Prairie Coal Association ("DMPCA"), an

Illinois not-for-profit corporation.[1] The plaintiffs were "members" (shareholders) of DMPCA. The district court held that the plaintiffs' suit was time-barred under the corporate survival statute set forth in the Illinois General Not For Profit Corporation Act of 1943.[2] Ill.Rev.Stat. ch. 32, para. 163a61 (Smith–Hurd 1970).[3] Because we find that the plaintiffs' claims are not governed by the corporate survival statute, we reverse.

## I.

DMPCA was incorporated under the Illinois General Not For Profit Corporation Act of 1943. *See* Ill.Rev.Stat. ch. 32, para. 163a *et seq.* (Smith–Hurd 1970). The corporation was formed by a collection of individuals who owned land which was believed to contain commercially recoverable coal reserves. DMPCA provided a vehicle through which these landowners, the corporation's members, could act as a unit and sell their coal interests as a bloc, potentially at a more advantageous price.

To become a member of DMPCA, a landowner was required to file an application entitled "Appointment of Agent by Owner of Coal and Agreement of Membership." DMPCA's Board of Directors reviewed these applications; a landowner became a member of the corporation only if the application was accepted. The application provided, in part, that the landowner was "irrevocably" making DMPCA its agent "with full and exclusive power and authority" to execute "coal leases, options, easements of right of way, deeds (warranty and quit claims) and any and all other instruments or documents" which are "necessary or advisable to effect the sale, lease, production or mining" of the bloc of coal or "to effect the pooling or uniting" of the members. Legal title to the coal interests, however, remained with the members at all times; the interests were not transferred to DMPCA. The application also stated that "the sale of [DMPCA's] ... coal may only be made as a bloc" and that the corpo-

1. This suit was initially filed by plaintiffs Hunter and Snodsmith in the Circuit Court for the Second Judicial Circuit in Jefferson County, Illinois. Old Ben removed the suit to the United States District Court for the Southern District of Illinois pursuant to 28 U.S.C. § 1441. The district court's jurisdiction was based on diversity of citizenship under 28 U.S.C. § 1332. The plaintiffs are both Illinois residents and Old Ben is a Delaware corporation with its principal place of business in Kentucky. The amount in controversy exceeds $10,000. The parties agree that Illinois law governs this case.

    Plaintiffs sought in their pleadings to represent themselves and others similarly situated. The district court, however, dismissed the complaint without taking any action with regard to class certification. We need not address the appropriateness of class certification in this appeal.

2. Plaintiffs amended complaint consisted of two counts. Count I alleged that Old Ben wrongfully refused to acquire the coal interest owned by Snodsmith and one of two coal interests owned by Hunter (*see infra* text accompanying note 4) in breach of the option agreement. As noted, the district court held that this count was time-barred and dismissed it with prejudice. In Count III (Count II of the initial complaint was amended and labelled as Count III) the plaintiffs claimed that Old Ben breached the option agreement when it acquired one of the interests owned by Hunter but did not proceed to mine the coal. The district court determined that this

claim was also based on the option agreement and therefore was time-barred. Accordingly, Count III was dismissed with prejudice and plaintiffs' motion to amend the complaint was denied. On appeal both counts raise the same issue: was a cause of action arising from the option agreement time-barred under paragraph 163a61. We therefore consider both counts together and simply refer to them as "plaintiffs' claims."

3. The General Not for Profit Corporation Act of 1943 has been repealed and superseded by the General Not for Profit Corporation Act of 1986 which became effective on January 1, 1987. Ill.Rev.Stat. ch. 32, para. 101.01 *et seq.* (Smith–Hurd Supp.1987). The district court, in its February 3, 1987 decision, implicitly assumed that paragraph 163a61 of the 1943 Act was the proper statute to apply even though the 1986 Act became effective during the interim between the time the plaintiffs filed their suit in 1985 and the time the district court issued its opinion. Although the enactment of a new statute often raises a difficult issue as to whether it should govern the suit, *see, e.g., Fireside Chrysler–Plymouth Mazda, Inc. v. Chrysler Corp.,* 129 Ill.App. 3d 575, 84 Ill.Dec. 724, 472 N.E.2d 861 (1st Dist.1984), in this case the survival statute found in the 1986 Act is substantially similar to paragraph 163a61 and the difference does not affect our analysis of this case. *See infra* note 7. For the sake of simplicity we cite throughout to the 1943 Act as did the district court.

ration could only sell its bloc after a majority vote in which "each member ... [had] one vote for each acre in the bloc." Snodsmith executed this application and became a member of DMPCA on December 2, 1977. Hunter, who owned two coal interests, became a member with respect to one coal interest on December 2, 1978 and the other on February 6, 1979.

On February 21, 1978 DMPCA entered into an option agreement with Old Ben.[4] The option agreement, as amended, stated that it was "by and between Dahlgren Moores Prairie Coal Association ... (hereinafter called 'Optioner') ... and Old Ben Coal Company ... (hereinafter called 'Optionee')." A geographical region was designated in the agreement as "A–1." Under the agreement Old Ben was required, if it chose to acquire any coal interests within A–1, to purchase or lease all the coal interests owned by members of DMPCA which were located in this geographical area, provided that the members established merchantable title to the coal interests. The agreement contained the following provisions which are relevant to this lawsuit:

(a) "Optionor ... does hereby give and grant to Optionee during the option period ..., the irrevocable and exclusive right, privilege, and option of purchasing the Optioned Coal Interests." Option Agreement, para. 1.

(b) "Within thirty (30) days from said notification to exercise this option, members of Optionor shall furnish any and all evidence of title in their possession.... Optionee shall not be obligated to pay for any Optioned Coal Interests which shall not have such merchantable title." Option Agreement, para. 8.

(c) Within six months from March 9, 1981 "Optionee shall deliver to Option-

or unexecuted General Warranty Deeds [or leases].... Within ninety (90) days thereafter, Optionor shall obtain necessary signatures on all such deeds [or leases]."

. . . .

Those *grantors* who elect to receive payment of the purchase price for their interests on an installment basis ... shall also execute such additional documents ... as optionee may reasonably require...." Option Agreement, para. 9, as amended October 3, 1978, September 8, 1979, February 18, 1980, September 8, 1980, and February 19, 1981.

(d) "*Optionors (members of the association)* shall have two (2) options available to provide for the transfer of title of Optioned Coal Interests: (A) a Warranty Deed ..., or (B) a long-term Lease...." Option Agreement, as amended November 8, 1978 (emphasis added).

By letter dated February 26, 1979, Old Ben exercised its option to acquire the bloc of coal interests located in the area designated as A–1, which included those interests owned by the plaintiffs. Although Old Ben ultimately acquired a substantial majority of the coal interests designated in the option agreement directly from the DMPCA members by either long term lease or warranty deed, Snodsmith's coal interest and one of Hunter's coal interests were never acquired.[5]

On June 24, 1982, following the procedures set forth in DMPCA's bylaws, two-thirds of the DMPCA members voted to dissolve the corporation. The Secretary of State for Illinois issued articles of dissolution to DMPCA on September 13, 1982, legally dissolving the corporation.

---

**4.** Hunter became a member of DMPCA with respect to both of his coal interests (December 2, 1978, February 6, 1979) after the option agreement with Old Ben was executed, but before Old Ben exercised its option. In a letter dated February 26, 1979 Old Ben gave notice that it was electing to "acquire, subject to merchantable title, by lease or by purchase all of the optioned coal interests owned by persons in area A–1 which *are signed as members of*

*[DMPCA] on or before February 25, 1979.*" (emphasis added).

**5.** Old Ben contends that the plaintiffs did not offer evidence of merchantable title as they were required to do under the option agreement and therefore it was not obligated to acquire the plaintiffs' interests. This issue is not presently before us.

On May 6, 1985, 2 years and 7 months after the dissolution of DMPCA, the plaintiffs filed suit in federal district court. They alleged that they were entitled to specific performance of the option agreement. Specifically, in Count I they alleged that Old Ben was required to, but did not, acquire their coal interests under either a long term lease or a warranty deed. In Count III Hunter claimed that under the option agreement Old Ben was required to mine the interest it acquired from him and failed to do so. The district court dismissed the complaint with prejudice ruling that the plaintiffs' claims were time-barred under Illinois law.

## II.

This appeal considers whether the plaintiffs' claims were subject to the Illinois corporate survival statute applicable to not-for-profit corporations.[6] The statute provides:

> [t]he dissolution of a corporation ... by the issuance of a certificate of dissolution by the Secretary of State ... shall not take away or impair any remedy available to or against such corporation ... or [its] members, for any right or claim existing, or any liability incurred, prior to such dissolution, if action or other proceeding thereon is commenced *within two years* after the date of such dissolution.

Ill.Rev.Stat. ch. 32, para. 163a61 (emphasis added).[7] The district court granted Old Ben's motion for summary judgment because the plaintiffs' cause of action was filed 2 years and 7 months after the corporation's dissolution. The court stated:

> the option agreement which stands as the basis for plaintiffs' demand of specific performance is between DMPCA and Old Ben. If the corporation was not defunct it would be the right of DMPCA to bring suit to enforce the agreement. Only if it failed to do so would the members have rights to bring an action. *If brought, that action would be derivative in nature.* The corporation's dissolution does not change the derivative nature of the action now brought by the former members. *The motion agreement provided no individual right of action to the members.*

*Hunter v. Old Ben Coal Company,* No. 85–4338, slip op. at 4 (S.D.Ill. Feb. 3, 1987) (emphasis added).

### A.

■ As the quoted statement indicates, the district court's principal basis for concluding that the plaintiffs' claims were time-barred was its finding that these claims were derivative in nature. Under

---

**6.** Paragraph 163a61, like the analogous provision found in the Business Corporation Acts of 1933 and 1983 (*see infra* note 8), is a corporate survival statute, rather than a statute of limitations. "[A corporate survival statute's] purpose is to extend the life of a corporation for a two year period after dissolution so as to allow suits to be brought by or against a corporation which would otherwise abate upon dissolution." *Poliquin v. Sapp,* 72 Ill.App.3d 477, 28 Ill.Dec. 615, 619, 390 N.E.2d 974, 978 (4th Dist.1979) (construing former section 94 of the Business Corporation Act of 1933) (citation omitted).

**7.** The plain language of the statute states that it only applies to "any right or claim existing ... prior to such dissolution." At oral argument counsel for the plaintiffs conceded that the plaintiffs' cause of action arose before September 13, 1982, the date DMPCA was dissolved.

As noted previously, the General Not for Profit Corporation Act of 1943 was repealed after the plaintiffs' suit was filed in this case. The survival statute found in the General Not for Profit Corporation Act of 1986, however, is substantially similar to paragraph 163a61 under the prior act. Paragraph 112.80 of the new act provides that:

> The dissolution of a corporation either (1) by the issuance of a certificate of dissolution by the Secretary of State, or (2) by a judgment of dissolution by a circuit court of this State, or (3) by expiration of its period of duration, shall not take away nor impair any remedy available to or against such corporation, its directors, members or persons receiving distributions, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name.

Ill.Rev.Stat. ch. 32, para. 112.80 (Smith–Hurd Supp.1987).

Illinois law, a shareholder's claim is a derivative claim, not an individual claim, if the alleged injury only affects the shareholder indirectly in his or her capacity as a shareholder.

> Where there is no showing that plaintiff himself had been injured in any capacity other than in common with his fellow stockholders, the cause of action belongs to the corporation, and a stockholder may not seek relief on his own behalf. However, this general principle has no application where the wrongful acts are not only against the corporation but are also violations of a duty arising from a contract or otherwise, and owed directly by the wrongdoer to the stockholders.

*Zokoych v. Spalding*, 36 Ill.App.3d 654, 344 N.E.2d 805, 813 (1st Dist.1976) (citations omitted). The critical inquiry is whether "the 'gravamen' of the pleadings states injury to the plaintiff upon an individual claim as distinguished from an injury which indirectly affects the shareholders or affects them as a whole." *Id. See also Bio-Scientific Clinical Laboratory, Inc. v. Todd*, 149 Ill.App.3d 845, 103 Ill.Dec. 171, 174–75, 501 N.E.2d 192, 195–96 (1st Dist. 1986). A finding that the alleged wrongful action caused injury both to the corporation and to the plaintiff shareholder individually does not preclude a finding that the claim was a non-derivative individual action. *Id.* To determine whether Hunter and Snodsmith assert individual rather than derivative claims, we must analyze the nature of the legal relationship between the plaintiffs and Old Ben that was created by the option agreement.

In Illinois, it is presumed that parties to a contract agree to bargain for themselves and only incidentally for third persons. *Waterford Condominium Assoc. v. Dunbar Corp.*, 104 Ill.App.3d 371, 60 Ill.Dec. 110, 432 N.E.2d 1009 (1st Dist.1982). A party who lacks privity to a contract, however, can still sue to enforce the agreement if he or she is a third party beneficiary of the contract. The seminal Illinois authority on the issue of whether a party is a third party beneficiary is *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 178 N.E. 498 (1931). *See Altevogt v. Brinkoetter*, 85 Ill.2d 44, 51 Ill.Dec. 674, 421 N.E.2d 182 (1981); *F.W. Hempel & Co., Inc. v. Metal World, Inc.*, 721 F.2d 610 (7th Cir.1983).

> If a contract be entered into for a direct benefit of a third person not a party thereto, such third person may sue for breach thereof. The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract. If direct, he may sue on the contract, if incidental he has no right of recovery thereon.

*Carson Pirie Scott*, 178 N.E. at 501.

To be a "direct" beneficiary and therefore the third party beneficiary of a contract, the parties to the agreement must "have manifested in their contract an intention to confer a benefit upon the third party." *Altevogt*, 421 N.E.2d at 187. A third party's right to enforce a contract "rests upon the liability of the promisor, and this liability must affirmatively appear from the language of the instrument when properly interpreted and construed." *Carson Pirie Scott*, 178 N.E. at 501. A third party, however, does not have to be specifically named in the instrument. "The contract may define a third party by description of a class, and it is sufficient if the plaintiff may be identified at the time performance is due as a member of the class intended to be benefited." *Altevogt*, 421 N.E.2d at 187. With these principles in mind, we turn to the claims of plaintiffs Hunter and Snodsmith.

The parties to the option agreement were Old Ben and DMPCA. The agreement, however, was essentially a contract obligating Old Ben to contract directly with DMPCA's members. Once Old Ben exercised the option agreement it was legally required to purchase or lease the coal interests from those members of DMPCA who complied with the provisions of the option agreement. The principal obligation of the members under the option agreement was to provide Old Ben with evidence of merchantable title. Assuming that this requirement was met, the amended agreement provided that "*[o]ptioners (members of the association) shall have two (2) options*" to transfer title to Old Ben: warran-

ty deed or long term lease. Option Agreement, as amended November 8, 1978 (emphasis added). Once a lease or sale was executed, Old Ben was required to make payments directly to the members, not to DMPCA.

We find that the option agreement was intended by the promisor, Old Ben, to directly benefit the DMPCA members. The November 8, 1978 amendment specifically identifies the members of DMPCA and indicates that the option agreement was to serve as a master contract which set forth the critical terms of the agreements to be entered into between Old Ben and the individual corporation members. Although the option agreement does not identify plaintiffs Hunter and Snodsmith directly, Illinois law does not require specific identification. The plaintiffs were within the class (DMPCA members) which was intended to be benefited by the Option Agreement. We hold that under Illinois law plaintiffs Hunter and Snodsmith were third party beneficiaries of the Option Agreement between Old Ben and DMPCA.

We therefore also conclude that the district court erred in finding that the plaintiffs did not allege individual claims. The plaintiffs sued on their own behalf to enforce a contract under which they were third party beneficiaries and the parties to whom Old Ben owed a direct duty. We hold that the plaintiffs' right to enforce the option agreement was independent of DMPCA's rights under the agreement and therefore was not derivative in nature.

The unique distribution of the loss among DMPCA's shareholders which resulted from the alleged breach of the option agreement provides further evidence of the individual nature of plaintiffs' claims. Usually when a contract with a corporation is breached, any financial injury to the corporation indirectly affects all of the corporation's shareholders in proportion to their ownership interest. In contrast, Old Ben's alleged wrongful failure to buy Hunter's and Snodsmith's coal interests affected only Hunter and Snodsmith. Although the plaintiffs claims were based on a breach of the agreement between Old Ben and DMPCA, their alleged injury had no direct adverse financial impact on DMPCA itself or on the other members of DMPCA because the benefits of the option agreement flowed individually to each DMPCA member, not to DMPCA itself.

### B.

Paragraph 163a61 does not specifically state that it applies only to derivative suits. We hold, however, that the statute does not apply to the individual claims brought by the plaintiffs in this case. The statute states that the legal dissolution of a corporation "shall not take away or impair any remedy available to or against such corporation, its directors, or *members*, for any right or claim existing ... prior to such dissolution" if the claim is brought within two years from the date of dissolution. Ill.Rev.Stat. ch. 32, para. 163a61 (emphasis added). The critical issue is the meaning of the phrase "any remedy available to ... such corporation ... or [its] members." Although neither the parties nor our independent efforts located any helpful authority construing this portion of paragraph 163a61, a number of Illinois Appellate Court decisions have reviewed the analogous provision, former section 94, found in the Illinois Business Corporation Act of 1933. Ill.Rev.Stat. ch. 32, § 157.94 (Smith-Hurd 1970).[8] In both *Koepke v. First National Bank of DeKalb*, 5 Ill.App. 3d 799, 284 N.E.2d 671 (2nd Dist.1972), and *Poliquin v. Sapp*, 72 Ill.App.3d 477, 28 Ill.Dec. 615, 390 N.E.2d 974 (4th Dist.1979),

---

**8.** The Business Corporation Act of 1933 was repealed and replaced by The Business Corporation Act of 1983. Former section 94 now appears as Ill.Rev.Stat. ch. 32, para. 12.80 (Smith-Hurd Supp.1987). The language of paragraph 12.80 is virtually identical to the provisions of section 94, except that the two year period has been changed to five years.
Section 94 provided that:

the issuance of a certificate of dissolution by the Secretary of State ... shall not take away or impair any remedy available to ... such corporation ... or [its] shareholders, for any right or claim existing ... prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution....

the Illinois Appellate Court determined that a suit brought by former shareholders more than two years after the corporation dissolved was barred by the corporate survival statute. In each case, however, the basis of the decision was the court's conclusion that the claim brought was a derivative action. *Koepke,* 284 N.E.2d 671 (former shareholders sued third party for breach of contract, but no indication that shareholders were the third party beneficiaries of the contract); *Poliquin,* 390 N.E.2d 974 (suit against former directors for breach of fiduciary duty). *See also Shute v. Chambers,* 142 Ill.App.3d 948, 97 Ill.Dec. 92, 492 N.E.2d 528 (1st Dist.1986); *Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co.,* 629 F.2d 1183 (7th Cir.1980) (suit alleged that third party violated the anti-trust laws).

Derivative suits by former shareholders are therefore governed by the statute. It is possible, however, that the provision has an even broader scope—conceivably including certain suits by former shareholders brought in their individual capacity.[9] While this is perhaps a tenable position, the implication of the Illinois decisions construing former section 94 is that only members' claims that are derivative in nature are barred if brought after the specified two-year period. These decisions indicate that section 94 and therefore the analogous paragraph 163a61, do not apply to a suit

brought by a party in his or her individual capacity.

The most helpful authority on this point is *Shute v. Chambers,* 142 Ill.App.3d 948, 97 Ill.Dec. 92, 492 N.E.2d 528 (1st Dist. 1986). On June 17, 1973, Dennis Chambers entered into an agreement with BMS Corporation to acquire BMS's assets. Pursuant to the acquisition, Chambers signed a note with BMS for a portion of the purchase price. On July 15, 1975 BMS dissolved and the note passed to some of BMS' shareholders pursuant to the dissolution. Approximately two years after the acquisition of BMS's assets, Chambers' company went out of business. Chambers failed to make any payment on the note although payment was due beginning in July 1974. In 1979 (four years after BMS dissolved), these shareholders brought a lawsuit against Chambers to collect on the note. Chambers argued that the claim arose prior to BMS's dissolution and abated under the Illinois corporate survival statute because it was brought more than two years after BMS was legally dissolved. The Illinois Appellate Court disagreed.

The primary issue the court had to resolve was whether the shareholders' claims were brought in their individual capacity or derivatively as shareholders. There was no question that the note was initially between BMS and Chambers. The difficult

---

**9.** It is unreasonable to interpret the statute as applying to *any individual* claims brought by former members of a dissolved corporation. At its extreme, this interpretation would mean that a former member of DMPCA who had the misfortune to be hit by a car driven by an intoxicated person more than two years after DMPCA dissolved would have any tort remedy barred by paragraph 163a61; the suit would be a claim brought by a member after the period authorized in the statute had elapsed. The statute therefore cannot apply to individual claims that are not connected to DMPCA in any manner other than the fortuity of being brought by or against a former member.

Plaintiffs' claims, however, although determined to have been brought in their individual capacity, have a much closer nexus with DMPCA. The claims arise from the option agreement between DMPCA and Old Ben and plaintiffs can sue only because they were shareholders of DMPCA—the third party beneficiaries of the option agreement. It is possible,

at least initially, to believe that the Illinois legislature intended paragraph 163a61 to fix a definite date on which suits by and against the corporation and suits brought by shareholders in their individual capacity which are closely related to or arise out of corporate affairs would be terminated. *See Van Pelt v. Greathouse,* 219 Neb. 478, 364 N.W.2d 14, 20 (1985) (Nebraska corporate survival statute "destroys the capacity of former shareholders of a dissolved corporation to sue or be sued on rights entirely dependent upon and existing solely as an outgrowth of the shareholder status except within 2 years after the corporation has been dissolved."); *Russell v. First York Savings Co.,* 218 Neb. 112, 352 N.W.2d 871, 874 (1984) (suit by minority shareholder challenging distribution of corporate assets upon dissolution was barred by Nebraska corporate survival statute even though brought in individual capacity because arose solely from plaintiff's status as shareholder). *See infra* note 10 and accompanying test.

question was whether after the note had passed to the shareholders pursuant to BMS's dissolution, the shareholders held the note in their individual capacity; if so, the court assumed the shareholders could enforce the note despite the corporate survival statute. The Illinois Appellate Court concluded that the shareholders held the note in their individual capacity. The court stated: "After the corporate debts were paid, [the note] became plaintiffs' individual property by operation of law. Their present right to sue on this debt is in no way derivative of any injury to the former corporation." *Id.* 492 N.E.2d at 532. The court therefore concluded that the survival statute did not bar the suit. *Id.*

The critical point for our purposes is the distinction drawn between claims held individually by former shareholders and claims

held derivatively. If a claim is held individually, even if it arises in conjunction with a corporate matter (as in *Shute* and here), the corporate survival statute does not bar a suit to enforce the claim even if it is brought after the time period specified in the corporate .survival statute.[10] Because we find that plaintiffs' claims were individual claims and not derivative, we hold that their cause of action was not barred by paragraph 163a61.[11] The decision of the district court is REVERSED.

**10.** The nexus between DMPCA's activity and the former shareholders' claim was not substantially stronger (if stronger at all) than in *Shute*. As noted, in *Shute* the suit was by former BMS shareholders to enforce the note that arose in conjunction with the sale of BMS's assets. The note was undisputably a corporate asset at one time, yet the Illinois Appellate Court did not find the suit barred by the corporate survival statute. In the present case, the right to bring individual actions against Old Ben as third party beneficiaries was never a corporate asset which devolved to the members; they held this capacity once Old Ben executed its option. We therefore conclude that paragraph 163a61 does not apply to the individual claims brought by Hunter and Snodsmith even though their claims arose from the option agreement—an agreement that culminated the very process for which DMPCA was formed. *See supra* note 9.

This result is consistent with the rationale underlying corporate survival statutes. The purpose of these statutes (presently adopted in some form in every state) is to reconcile the competing goals of (1) definitively winding up the affairs of the corporation and (2) preventing the potential injustice which results from the abatement of all claims by and against the corporation upon dissolution (the common law rule). *Canadian Ace,* 629 F.2d at 1189. *See generally* Frielander & Lannie, *Post-Dissolution Liabilities of Shareholders and Directors for Claims Against Dissolved Corporations,* 31 Vand. L.Rev. 1363 (1978). In the present case neither concern has to be sacrificed. DMPCA's affairs were definitively concluded and no injustice will result if the plaintiffs are allowed to litigate their claims. In contrast to the situation in *Koepke, Poliquin,* and *Canadian Ace,* Hunter and Snodsmith have brought an individual suit. This is not a situation where DMPCA's share-

holders failed to bring "an appropriate derivative action on behalf of the corporation within the time allowed" and now seek to bring the same claim by merely casting it as an individual suit. *Poliquin,* 390 N.E.2d at 977–78. Rather, the plaintiffs seek to bring an individual action that they were always entitled to bring on their own behalf once Old Ben executed its option. The plaintiffs' claims are analogous to a situation where "A" signs a single contract to which both "B" and corporation "C" are parties and to whom A owes the same duty. B's ability to enforce the contract is not affected by whether C continues as an on-going concern or dissolves. In either case, B can sue A for breach of contract if A fails to fulfill its duty under the agreement (even if C is barred from bringing suit by the corporate survival statute).

**11.** In *Canadian Ace,* decided prior to the Illinois Appellate Court's decision in *Shute v. Chambers,* 142 Ill.App.3d 948, 97 Ill.Dec. 92, 492 N.E.2d 528 (1st Dist.1986), we rejected the plaintiffs' claim that they were suing in their individual capacity as successors in interest rather than as former shareholders. We stated that "[n]o matter how plaintiffs classify themselves, we conclude, as we think the Illinois Supreme Court would, that [the corporate survival statute] bars, after two years, any actions on inchoate claims." 629 F.2d at 1188. We do not think our ruling in *Canadian Ace* is in conflict with the *Shute* decision because the *Shute* court specifically distinguished *Canadian Ace. Shute,* 492 N.E.2d at 531. To the extent that the quoted dicta indicates that any and all suits brought by persons who were former shareholders would be barred by the corporate survival statute, regardless of whether the action was brought in their individual capacity, the quoted language was an incorrect statement of Illinois law.