**Ricardo J. PAGE and Paul E. Fenske, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 99–441C.

United States Court of Federal Claims.

June 8, 2001.

Ricardo J. Page and Paul E. Fenske, Maywood, IL, pro se.

John C. Einstman, with whom were David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, Harold D. Lester, Jr., Assistant Director, Department of Justice, Washington, DC, for defendant. James D. Holt, Department of Agriculture, of counsel.

### OPINION AND ORDER

HEWITT, Judge.

This is a pro se takings claim by the operators of an ostrich quarantine station. Plaintiffs, Ricardo J. Page and Paul E. Fenske, allege that a 1994 regulatory change pertaining to quarantine facilities for birds effected a "permanent and substantial interference with [their] leasehold and business" amounting to an unconstitutional taking without just compensation. Complaint (Compl.) ¶¶ VI, X. Defendant, acting through the United States Department of Agriculture Animal and Plant Health Inspection Services (APHIS or the agency), has moved to dismiss or, alternatively, for summary judgment. Defendant contends that plaintiffs cannot maintain this action in their individual capacities and unrepresented by counsel because plaintiffs signed their lease as officers of the corporate entity, Star International Ostrich, Inc. (Star). Defendant also contests plaintiffs' claim on the merits. This opinion addresses the issue of who are the proper parties to the action.[1]

I. Discussion

A. Identifying the Proper Party Plaintiff

Pro se plaintiffs, Ricardo Page and Paul Fenske, filed this action on July 6, 1999

---

1. The court cannot address the merits of the action until this threshold issue is resolved.

alleging that a 1994 regulatory change adversely impacted the operation of their ostrich quarantining facility in Bensenville, Illinois and effected a taking of their property without compensation. Compl. ¶¶ I, III, X, XI. Plaintiffs state in their complaint that "[p]laintiffs obtained an ostrich quarantining permit and entered into a five year lease agreement with Petelle Industrial Real Estate (Petelle), on or about December 17, 1993." Compl. ¶ III. Attached to the complaint is a copy of plaintiffs' January 19, 1994 application to APHIS for approval of the quarantine facility. *See* Compl. attach. The named applicant on the APHIS application is Star International Ostrich, Inc. (Star). *Id.* Plaintiffs, Ricardo Page and Paul Fenske, are listed on the application as President and Chief Executive Officer (CEO) respectively of the applicant corporate entity. *Id.* In order to ascertain the identity of the real party in interest in the case, the court directed plaintiffs to file a copy of the lease for the ostrich quarantine station. *See* Order dated November 28, 2000. Plaintiffs filed a certified copy of the Industrial Space Lease dated December 17, 1993 (Lease) with the Clerk of the Court of Federal Claims on December 12, 2000. The Lease was executed by plaintiffs in their respective capacities as President and CEO of Star. Compl. at ¶ III; Lease at 1, 9; Plaintiff's Response to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment (Pls.' Resp.) at 1. Plaintiffs seek damages arising out of "permanent and substantial interference with [their] leasehold and business." [2] Compl. ¶ X. Because it appears that Star and not the individually named plaintiffs is the leaseholder and operator of the business which is the subject of plaintiffs' taking claim, the court must examine whether, as contemplated by the Rules of this court, the proper parties are before the court.

**B. Rule 17**

Rule 17 of the Rules of the Court of Federal Claims (RCFC) states that "[e]very action shall be prosecuted in the name of the real party in interest." RCFC 17. Messrs. Page and Fenske, who have brought this action in their individual capacities as pro se plaintiffs, assert that they are the proper plaintiffs in this case because at the time they signed the lease agreement as corporate officers, Star did not exist as a corporate entity.[3] Plaintiffs' Reply to the Defendant's Reply of February 21, 2001 to the Plaintiffs' February 5, 2001 Response Regarding Star International Ostrich Inc.'s Interest in Plaintiffs' Claim in this Matter (Pls.' Reply) at 1–2. Rather, plaintiffs explain, Star did not come into existence until February 2, 1995, nearly two years later, when plaintiff, Ricardo Page, "cause[d] to be filed an Articles of Amendment to an existing corporation" and thereby "changed the name of FENSKE and PAGE * STAR INTERNATIONAL, INC. to STAR INTERNATIONAL OSTRICH, INC." [4] *Id.* at 2 (emphasis in original). Plaintiffs allege that because they were "personally liable under the lease," they are the proper parties to file suit. *Id.* In support of their allegations, plaintiffs have filed with their reply brief certified copies of the following documents: (1) Articles of Amendment dated February 2, 1995 amending the Articles of Incorporation to reflect a corporate name change from Fenske and Page * Star Internation (sic) Inc. to Star International Ostrich, Inc.; and (2) Articles of Amendment dated January 28, 1991 amending the Articles of Incorporation to reflect a corporate name change from Page Investments, Inc. to Fenske and Page * Star International, Inc. *See* Appendix to Pls.' Reply (Pls.' Reply App.).

The certified copy of the Lease establishes that Messrs. Page and Fenske signed the Lease, as corporate officers of Star, for an

---

**2.** Plaintiffs specifically complain that the 1994 regulatory change substantially reduced the number of eggs plaintiffs could import, influenced plaintiffs' investors to "back[ ] out of their relationship with [p]laintiffs" and caused plaintiffs to "operate at a severe and unreasonable loss." Compl. ¶¶ VIII, IX.

**3.** The section of the APHIS application describing the "status" of the applicant is marked as corporation being formed. *See* Compl. attach.

**4.** Plaintiffs do not address the delay between the adoption of the amendment and the filing of the amendment in their briefing.

ostrich quarantining facility on December 17, 1993. *See* Lease at 1, 9. The Articles of Amendment filed with the Illinois Secretary of State in 1995 state that the "amendment of the Articles of Incorporation [effecting the corporate name change to Star International Ostrich, Inc.] was adopted on December 16, 1993," one day prior to the execution of the lease. Pls.' Reply App. When plaintiffs filed in 1995 the Articles of Amendment adopted on December 16, 1993 that changed the corporate name to Star International Ostrich, Inc., Illinois state law provided:

> The amendment shall become effective and the articles of incorporation shall be deemed to be amended accordingly, as of the later of: (a) the issuance of the certificate of amendment by the Secretary of State; or (b) the time established under the articles of amendment, not to exceed 30 days after the issuance of the certificate of amendment by the Secretary of State.

805 Ill. Comp. Stat. 5/10.35 (1993). Under Illinois state law, the amendment effecting the corporate name change to Star did not become effective until the filing date of February 2, 1995.[5]

Plaintiffs insist that at the time they signed the Lease, Star was not a corporate entity. Pls.' Reply at 4. This insistence appears to the court to be misplaced. Plaintiffs simply do not address the fact that the corporate entity which subsequently took on the name that appears on the Lease did exist at the time Messrs. Page and Fenske executed the Lease on Star's behalf. The mere fact that the name change of Fenske and Page * Star International, Inc. to Star did not become effective until after the date of execution of the Lease does not mean that Star is not the proper party to bring this action. It appears to the court that plaintiffs misnamed the corporation on behalf of which they signed the lease as Star rather than Fenske and Page * Star International, Inc. The court must consider the legal effect of that misnomer.

C. Legal Effect of Misnamed Corporation on Contract

 The United States Supreme Court has observed that "a contract is not avoided by misnaming the corporation with which it is made." *County of Moultrie v. Fairfield,* 105 U.S. 370, 377, 26 L.Ed. 945 (1881). It is well understood that a mere misnomer of a corporation in a written instrument or other business transaction is not material in its consequences "if the identity of the corporation intended is clear or can be ascertained by proof." 6 William M. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 2444 (1996). "[A]s long as the identity of the corporation can be reasonably established from the evidence[,] ... [e]rror in the use of the corporate name will not be permitted to frustrate the intent which the name was meant to convey." *Id. See also In re B–F Bldg. Corp.,* 284 F.2d 679, 680 (6th Cir.1960) ("[T]he misdescription of the name of the bankrupt [corporation] d[oes] not affect the validity of the contract where the intention was to bind the bankrupt corporation.").

 In determining whether a misnamed corporation is legally bound by an executed contract, Illinois law requires that a court consider "whether it is the intention of parties to bind the corporate principal or to bind the purported agent individually." *People ex rel. City of Prospect Heights v. Village of Wheeling,* 147 Ill.App.3d 838, 101 Ill.Dec. 277, 498 N.E.2d 601, 603 (1986). *See also Freeport Journal–Standard Publ'g. Co. v. Frederic W. Ziv Co.,* 345 Ill.App. 337, 103 N.E.2d 153, 157 (1952) (stating, in a case involving an industrial lease, that "[t]he general rule is that a contract signed by a corporate officer or agent need not be made and signed in the name of the corporation to render the corporation liable thereon, if it was the intention of the parties to bind the corporation"). A deciding court properly considers "all of the facts and circumstances surrounding the making of the contract." *City of Prospect Heights,* 101 Ill.Dec. 277, 498 N.E.2d at 603.

---

**5.** The December 16, 1993 Articles of Amendment filed in 1995 did not contain an alternative date as contemplated by subparagraph (b) of 805 Ill. Comp. Stat. 5/10.35. *See* Pls.' Rep.App.

■ Defendant contends that the court may discern the intention of the parties to bind the misnamed corporate entity from the documents filed, at the court's direction, by Messrs. Page and Fenske. *See* Defendant's Reply, Pursuant to this Court's January 8, 2001 and March 21, 2001 Orders, to Plaintiffs' March 22, 2001 "Reply to the Defendant's Reply of February 21, 2001 to the Plaintiffs' February 5, 2001 Response Regarding Star International Ostrich, Inc.'s Interest in Plaintiffs' Claim in this Matter" (Def.'s Surreply) at 5; *see also* Orders respectively dated November 28, 2000, December 12, 2000, February 21, 2001, and March 26, 2001. Defendant points specifically to the Articles of Amendment filed in 1995 which reflect that the corporation operating as Fenske and Page * Star International, Inc. adopted an amendment to change the corporate name to Star International Ostrich, Inc. on December 16, 1993, one day prior to executing the Lease with Petelle for ostrich quarantining space. Def.'s Surreply at 5. In addition to adopting a corporate name change that contemplated an ostrich business, the company executed a lease which stated that "[t]he Leased Premises shall be used and occupied only for the purpose of offices and incubation of ostrich eggs." Lease ¶ III. Although the corporate name change to Star did not become effective until 1995, Messrs. Page and Fenske signed the lease as corporate officers of Star. Further, plaintiffs filed this action alleging in their complaint that "[p]laintiffs' business plan was to effectively quarantine and hatch the eggs on the premises and then sell the chicks in pairs for breeding purposes." Compl. ¶ V. Thus, defendant asserts, the facts and circumstances surrounding the execution of the Lease indicate that plaintiffs acted not individually, but as corporate officers intending to bind a corporate entity when they signed the lease with Petelle.[6] Def.'s Surreply at 5–7.

### D. Effect of Dissolution of Corporation

■ Plaintiffs maintain, however, that they are, in fact, the proper parties in interest because they are now the sole shareholders of an insolvent corporation. They explain that "the corporation, for all practical purposes, almost doesn't exist." Transcript of Status Conference held on January 5, 2001(Tr.) at 9. Voicing concern about the requirement under the Rules of the court that a corporation be represented by counsel, *see* RCFC 81(d)(8), plaintiffs add that "there is no way, impossible, absolutely impossible, we cannot afford counsel. We can't afford it, and I tried."[7] Tr. at 10. Plaintiffs contend that the court should permit them to proceed individually as pro se plaintiffs because they "would have been personally liable on the lease" in the event of a default. *See* Amendment to Plaintiffs' Reply to the Defendant's Reply of February 21, 2001 to the Plaintiffs' February 5, 2001 Response Regarding [sic] Star International Ostrich Inc.'s Interest in the Plaintiffs' Claim in this Case (Pls.' Amend.) at 2; Tr. at 5, 9. The Lease, however, contains no provisions imposing personal liability on plaintiffs in the event of default. *See* Lease. In support of their position that Star no longer exists as a corporate entity, plaintiffs filed with the court on March 26, 2001 a Certificate of Dissolution of Domestic Corporation, reflecting dissolution of the corporate entity Star International Ostrich, Inc. for failure to file an annual report and to pay an annual franchise tax. *See* Pls.' Reply App.

The Certificate of Dissolution executed by the Illinois Secretary of State on February 1, 2001 post-dates the filing of plaintiffs' complaint on July 6, 1999. For guidance regarding the legal effect of the Certificate of Dis-

---

**6.** The only statement anywhere in the record relating to possible personal liability of plaintiffs under the Lease is contained in a pleading filed by plaintiffs with this court on February 5, 2001, after the real party in interest issue was raised by the court. Pls.' Reply at 2. Such a conclusory statement does not outweigh contemporaneous documentary evidence of the "circumstances surrounding the making of the contract." *See City of Prospect Heights,* 101 Ill.Dec. 277, 498 N.E.2d at 603.

**7.** Plaintiffs' focus on the inability to afford counsel is misplaced. *See Talasila, Inc. v. United States,* 240 F.3d 1064, 1067 (Fed.Cir.2001) (stating that RCFC 81(d)(8) does not contemplate a financial hardship exception to the requirement that a corporation be represented by counsel).

solution, the court looks to a recent decision issued by the Court of Appeals for the Federal Circuit in a closely analogous circumstance. *See Talasila, Inc. v. United States*, 240 F.3d 1064 (Fed.Cir.2001).

In *Talasila*, a pro se plaintiff and the corporate entity of which plaintiff was the sole shareholder filed a complaint in this court alleging improper termination of a contract for default. *Id.* at 1065. After the withdrawal of plaintiffs' first attorney and the failure of plaintiffs' second attorney to seek admission to practice before this court, the court ordered plaintiffs to obtain competent representation by counsel. *Id.* In response, plaintiffs informed the court that the Texas corporation had been dissolved two months after the complaint was filed and urged the court to permit the shareholder-plaintiff, as the sole successor-in-interest, to proceed pro se. *Id.* at 1065–66. This court denied plaintiff's request and dismissed plaintiffs' complaint for failure to obtain counsel. *Id.* at 1066. The Federal Circuit affirmed, stating, "The fact that [the corporation] is now a dissolved corporation and that [plaintiff], as sole shareholder of the dissolved corporation, is the sole successor-in-interest to the corporation's assets, does not affect the applicability of Rule 81(d)(8)." *Id.* The Federal Circuit further observed that " '[t]he court is not free to waive this rule, even in cases of severe financial hardship.' " *Id.* (quoting *Finast Metal Prods., Inc. v. United States*, 12 Cl.Ct. 759, 762 (1987)). *See also Richdel, Inc. v. Sunspool Corp.*, 699 F.2d 1366, 1366 (Fed.Cir.1983) (interpreting an analogous Federal Circuit rule). In determining that the dissolved corporation must maintain the claim that it filed prior to its dissolution, the Federal Circuit noted that Texas law contemplates the continued corporate existence of a dissolved corporation for the purpose of resolving claims:

> "[a] dissolved corporation shall continue in its corporate existence for a period of three years from the date of dissolution, for the ... purpose [of] prosecuting ... in its corporate name any action or proceeding by ... the dissolved corporation." Tex. Bus. Corp. Act Ann. art. 7.12(A) (West 2000). "If an action or proceeding on an existing claim by ... a dissolved corporation is brought before the expiration of the three-year period following the date of dissolution ... the dissolved corporation *shall* continue to survive ... for purposes of that action or proceeding until all judgments, orders, and decrees therein have been fully executed...." *Id.* art. 7.12(D).

*Talasila*, 240 F.3d at 1066 (emphasis added). The Texas statute makes clear that a dissolved corporation continues its corporate existence for the purpose of claim resolution.

### 1. Illinois's corporate survival statute

Like the Texas law considered in the *Talasila* decision, the state law of Illinois, which the court applies in this case, provides that dissolution of a corporation does not abate a civil claim pending by the corporation on the effective date of dissolution. 805 Ill. Comp. Stat. 5/12.30(c)(5) (2000); *Mid–American Elevator Co., Inc. v. Norcon, Inc.*, 287 Ill. App.3d 582, 223 Ill.Dec. 202, 679 N.E.2d 387, 391 (1997) (stating that a judgment creditor's pending claim survives the dissolution of the corporation). Illinois state law, like the law of Texas, *see* Tex. Bus. Corp. Act Ann. art. 7.12, provides for continued corporate existence to resolve claims:

> The dissolution of a corporation ... by the issuance of a certificate of dissolution by the Secretary of State ... shall not take away nor impair any civil remedy available to ... such corporation, its directors, or shareholders, for any right or claim existing ... prior to such dissolution if action or other proceeding thereon is commenced within five years after the date of such dissolution. Any such action or proceeding by ... the corporation *may be prosecuted ... by the corporation* in its corporate name.

805 Ill. Comp. Stat. 5/12.80 (2000) (emphasis added). The language of the Illinois statute differs slightly from the Texas law. While the right of an Illinois corporation to prosecute an existing claim survives dissolution of the corporation under Illinois law, the text of the statute ("may be prosecuted") does not appear to require that the company itself maintain the action. The court examines who—other than the corporation—might

prosecute an action on behalf of a dissolved corporation under Illinois law.

The Court of Appeals for the Seventh Circuit offers some guidance in *Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co.,* 629 F.2d 1183 (7th Cir.1980). In affirming a decision by the Illinois district court holding that the antitrust claims brought by former stockholders of a dissolved Illinois corporation against two former competitors were time-barred, the Seventh Circuit addressed Illinois Business Corporation Act (IBCA) § 94, the predecessor to the corporate survival statute applicable in this case. *Id.* at 1184–85. Section 94 of the IBCA preserved corporate claims existing prior to corporate dissolution if proceedings were commenced within a prescribed time from the date of dissolution.[8] *Id.* at 1184, 1186–87. While "recogniz[ing] the general principle that property of a dissolved corporation passes to its stockholders, who can then maintain an action on the property," the Seventh Circuit drew a distinction between "the transfer of a corporate claim reduced to a judgment and a never asserted corporate claim" in considering whether claims asserted more than two years after the corporate dissolution were barred by the statutory limitations period. *Id.* at 1187. The Seventh Circuit reasoned that the time limitation in § 94 did not bar an untimely action on a claim that was reduced to a judgment prior to dissolution because the judgment created a fixed debt that passed by operation of law to stockholders in a manner "similar to a transfer of tangible property on which an action can be maintained." *Id.* In contrast, the Seventh Circuit explained, permitting " 'inchoate claims which were not reduced to judgment prior to dissolution' " and were not asserted within the (then) two year (now five year) statutory time limitation to be prosecuted would be inconsistent with the language of § 94 and would thwart the underlying policies of the statute. *Id.* (quoting West's Illinois Business Corporation Act Annotated § 94 (W. Murdock ed.1994)).

The *Canadian Ace Brewing* decision teaches that an inchoate claim of a dissolved corporation may be asserted not only by a dissolved corporation but also by a former shareholder of the dissolved corporation if asserted within the five year time limitation imposed by corporate survival statute. Implicit in the Seventh Circuit's decision is an acknowledgment that a corporate claim asserted prior to corporate dissolution is a property right that devolves to a shareholder upon dissolution of the corporation by operation of state law.[9] In the unpublished opinion of *Weiss v. Wark,* 1999 WL 1269416 *3 (7th Cir. Dec. 23, 1999), the Seventh Circuit expressly recognized that right, stating that a corporate claim asserted prior to the dissolution of a corporation passes with the corporate assets to the shareholders upon dissolution and thereby survives corporate dissolution. The period of time within which a shareholder can assert such a claim, however, and whether representation by counsel is required to maintain the claim, turn on whether the shareholder's claim is derivative or individual. *Canadian Ace Brewing,* 629 F.2d at 1186–88. To determine whether an individual who claims property as a former shareholder of an Illinois corporation possesses a derivative claim or an individual one, the court again looks to the Court of Appeals for the Seventh Circuit for guidance.

### 2. Ascertaining whether a shareholder's claim is derivative or individual

In *Hunter v. Old Ben Coal Company,* 844 F.2d 428 (7th Cir.1988), the Seventh Circuit

---

**8.** The Illinois Business Corporation Act (IBCA) of 1933 was repealed and replaced in 1983. Former § 94 of the 1933 IBCA now appears in the 1983 IBCA as § 12.80. *See* 805 Ill. Comp. Stat. 5/12.80. The language of the provisions is substantially similar. *Hunter v. Old Ben Coal Co.,* 844 F.2d 428, 434 n. 8 (7th Cir.1988). Former § 94 provided:

> the issuance of a certificate of dissolution by the Secretary of State ... shall not take away or impair any remedy available to ... such corporation ... or [its] shareholders, for any right or claim existing ... prior to such disso-

lution if action or other proceeding thereon is commenced *within two years* after the date of such dissolution.

*Id.* (emphasis added). In the current provision, § 12.80, the time period has changed from two years to five years. *Id.*

**9.** Illinois law specifically provides that upon dissolution of a corporation, the remaining corporate assets are "[d]istribut[ed] ... among its shareholders according to their interests." 805 Ill. Comp. Stat. 5/12.30(a)(4) (2000).

specifically considered a former shareholder's right to assert a claim of a dissolved corporation pursuant to Illinois' corporate survival statute. Reversing a decision by the Illinois district court, the Seventh Circuit held that a suit for specific performance of a contract filed by the former shareholders of a dissolved Illinois not-for-profit corporation against another corporation was not time-barred because the action did not arise out of rights of the dissolved corporation. *Id.* at 435. The action was based instead on the shareholders' individual claims as third-party beneficiaries under a contract.[10] *Id.* at 429, 432, 435. In reaching its decision, the Seventh Circuit observed:

> [T]he implication of the Illinois decisions construing former section 94 is that only members' claims that are derivative in nature are barred if brought after the specified two-year period. These decisions indicate that section 94 and therefore the analogous [provision governing not for profit corporations] do not apply to a suit brought by a party in his or her individual capacity [after the two year statutory time limit].

*Id.* at 434. The Seventh Circuit stated that "[t]he critical point for our purposes [in determining whether the cause of action was time-barred by the corporate survival statute] is the distinction drawn between claims held individually by former shareholders and claims held derivatively." *Id.* at 435.

The *Hunter* decision makes clear that if a former shareholder's claim derives from an injury to the corporation, the claim is a derivative claim. 844 F.2d at 435. The Seventh Circuit has also stated that "[u]nder Illinois law, a shareholder's claim is a derivative claim, not an individual claim, if the alleged injury only affects the shareholder indirectly in his or her capacity as a shareholder." *Id.* at 431–32. "A derivative suit is, in legal effect, a suit brought by the corporation, but conducted by the shareholders." *Cannon v.*

*U.S. Acoustics Corp.*, 398 F.Supp. 209, 213 (N.D.Ill.1975), *rev'd in part on other grounds*, 532 F.2d 1118 (7th Cir.1976). The Seventh Circuit has explained that because a derivative claim belongs to the corporation, it must be asserted either before the corporation dissolves or within the five years period during which its capacity to sue survives. *Weiss*, 1999 WL 1269416 at *3 (citing *Hunter*, 844 F.2d at 434). In deciding that the shareholder claim was time-barred by the corporate survival statute in *Weiss*, the Seventh Circuit stated that "[a]lthough the Shareholders arguably succeeded to [the dissolved corporation's] interest in the joint-venture agreement ... their claims nonetheless are derivative because they are grounded in an alleged injury to [the dissolved corporation] as the party to the agreement." *Weiss*, 1999 WL 1269416 at *3.

The reasoning of the Seventh Circuit in *Hunter* and *Weiss* is applicable here. Messrs. Page and Fenske brought this takings action as pro se plaintiffs prior to the corporate dissolution of Star. In response to the court's inquiry regarding who is the real party in interest in this case, plaintiffs seek to maintain the action as individual successors-in-interest to the corporate assets. Plaintiffs' claims, however, are grounded in an alleged injury to their corporate predecessor-in-interest, Star. Star was the leaseholder and operator of the business that plaintiffs allege was taken by defendant's regulatory action. *Compare Weiss*, 1999 WL 1269416 at *3 (holding that shareholders' suit is derivative when dissolved corporation was party to agreement that was subject of suit). Accordingly, because plaintiffs assert this claim as former shareholders of Star seeking compensation for an injury to Star, the takings claim is derivative. *See id.*

Construing plaintiffs' claims as shareholders' claims from and after the date of Star's dissolution does not relieve plaintiffs of the obligation to obtain counsel. To maintain a

---

10. The corporate survival statute applied in the case was § 163a61 of the Illinois General Not For Profit Corporation Act. *Hunter*, 844 F.2d at 431. Because the language of the provision is nearly identical to the language in former § 94 of the IBCA, *compare id.* at 431 n. 7 *with id.* at 434 n. 8, the Seventh Circuit's decision is instructive

for this case. *See* 2B Norman J. Singer, Sutherland Statutory Construction §§ 51.02–51.03 (5th ed.1992) (stating that it is a settled principle of statutory construction that statutes relating to the same subject matter should be construed *in pari materia.*).

shareholder derivative action in this court, a shareholder must be represented by counsel.[11] *See First Hartford Corp. Pension Plan & Trust v. United States,* 194 F.3d 1279, 1291–92 (Fed.Cir.1999). *See also* 13 William M. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 4463.10 (2000) ("Since a corporation cannot appear without an attorney, likewise the representative shareholder cannot appear without an attorney."). Even if asserted as shareholders' claims, plaintiffs cannot maintain this takings suit pro se.

### D. Assignment of Claim by Corporation

■ Plaintiffs inform the court that, following a 1997 settlement agreement with its landlord, Star "assigned all of its assets to [plaintiffs]." Plaintiffs' February 5, 2001 Response to the Court's Order of January 8, 2001 at 1. Plaintiffs contend that, based upon that assignment, they are "owners of the assets of the Corporation which consisted mainly of the claim." *Id.* Other than the filing of February 5, 2001 in which plaintiffs affirm that they are the sole shareholders of Star, however, plaintiffs have submitted no evidence establishing such assignment.[12]

Plaintiffs also suggest that the dissolution of Star, as evidenced by a Certificate of Dissolution of Domestic Corporation executed by the Secretary of State of Illinois on February 1, 2001, effects an assignment by operation of law from the corporation to its shareholders. *See* Pls.' Reply at 3. As the sole shareholders of the corporation, plaintiffs urge that they have standing to sue. *Id.* The court turns now to consider whether plaintiffs, in their individual capacities, may assert this takings action as a legally assigned claim.[13]

The Assignment of Claims Act (Act), set forth at 31 U.S.C. § 3727, governs the "transfer or assignment of any part of a claim against the United States Government." 31 U.S.C. § 3727(a)(1)(2001). The Act provides:

> An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued. The assignment shall specify the warrant, must be made freely, and must be attested to by 2 witnesses. The person making the assignment shall acknowledge it before an official who may acknowledge a deed, and the official shall certify the assignment. The certificate shall state that the official completely explained the assignment when it was acknowledged. An assignment under this subsection is valid for any purpose.

*Id.* § 3727(b).

Defendant contends that "plaintiffs have failed to demonstrate that a valid assignment of Star's alleged takings claim was made to Messrs. Page and Fenske pursuant to [the Act]." Defendant's Reply, Pursuant to this Court's January 8, 2001 Order, to Plaintiffs' February 5, 2001 Response Regarding Star International Ostrich, Inc.'s Interest in Plaintiffs' Claim in this Matter (Def.'s Reply to Feb. 5, 2001 Filing) at 4. Pointing to the language of the Act, which provides, in pertinent part, that "an assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued," 31 U.S.C. § 3727(b), defendant observes that the claim has not been decided nor has a warrant for payment issued. *See* Def.'s Reply to Feb. 5, 2001 Filing at 4. Defendant relies on *Apple-*

---

**11.** The Rules of this court "ha[ve] no direct counterpart to Rule 23.1 of the Federal Rules of Civil Procedure, which expressly governs derivative actions by shareholders in the federal district courts." *First Hartford Corp. Pension Plan & Trust v. United States,* 194 F.3d 1279, 1289 (Fed. Cir.1999). In *First Hartford,* however, the Federal Circuit held that this court has jurisdiction of shareholder derivative actions even though "the origins of the derivative suit are in equity." *First Hartford,* 194 F.3d at 1293–94.

**12.** By Order dated February 13, 2001, the court directed plaintiffs to file copies of the 1997 settle-

ment agreement and the subsequent asset assignment. Plaintiffs have not filed with the court any documents that are responsive to the court's order.

**13.** This opinion does not address whether what plaintiffs characterize as Star's "assign[ment] of all its assets to [plaintiffs]" was or is valid for some legal purposes not at issue in this proceeding. *See* Plaintiff's February 5, 2001 Response to the Court's Order of January 8, 2001 at 1. This case is governed, as discussed below, by the federal law of assignment.

gate v. United States, 35 Fed.Cl. 406 (1996), a takings case in which the Court of Federal Claims addressed the Assignment of Claims Act:

> The statute protects the Government by disallowing the assignment of contingent claims and "enable[s] the Government to deal only with the original claimant." In keeping with this purpose, the Act "prohibits the voluntary assignment of a compensation claim against the Government for the taking of property ." In effect, then, the Act precludes "successors-in-interest to individuals who would have been valid plaintiffs" from bringing compensation claims for takings, unless a valid, not voluntary, assignment under the Act occurred.
>
> Plaintiffs must demonstrate that a valid assignment of a takings claim has taken place, thereby allowing them to recover damages for the period preceding their ownership of the property at issue.

Applegate, 35 Fed.Cl. at 421 (citations omitted). Here, defendant argues, plaintiffs have not established "that a valid assignment of Star's alleged takings claim was made to Messrs. Page and Fenske" as contemplated by the statute. Def.'s Reply to Feb. 5, 2001 Filing at 4.

The court agrees. There is no evidence in this case that the statutory requirements for the assignment of Star's claim have been satisfied. The alleged claim has neither been allowed nor decided, and no warrant for payment has issued as required by the Act. See 31 U.S.C. § 3727(b). In Hobbs v. McLean, 117 U.S. 567, 6 S.Ct. 870, 29 L.Ed. 940 (1886), the Supreme Court defined the term "claim" in an early version of the Assignment of Claims Act as "a right to demand money from the United States" provided that such claim "can be presented by the claimant to some department or officer of the United States for payment, or may be prosecuted in the court of claims." Id. at 575. This court observes nothing in the language of the statute, its legislative history, or the interpretive

jurisprudence suggesting that the application of the Act is limited to particular types of claims.[14] Nor does the statute suggest that the statutory requirements for the assignment of a claim—specifically, the allowance of a claim and determination of the amount of a claim as well as the issuance of a warrant for payment—differ according to the type of claim to be assigned. Rather, the Act, which expressly states that "[a]n assignment under this subsection is valid for any purpose," 31 U.S.C. § 3727(b)(2001), appears to have broad application.

The foregoing observations do not fully dispose of the inquiry, however, in light of judicial interpretations of the Act creating exceptions to a strict interpretation of the Act's terms. Such "judicially-made exceptions" to the Act include assignments which occur by operation of law. Standard Mfg. Co. v. United States, 42 Fed.Cl. 748, 779 (1999). For example, in Stearns Co. v. United States, 34 Fed.Cl. 264 (1995), this court specifically recognized an exception to the Act for a "reorganization in business structure." Id. at 271. In that case, the corporation reorganized as a partnership in a different state, and the partnership pursued takings claims that had belonged to the corporation. Id. at 270. The court observed that the "equitable ownership of the taking claim at all times remained in the same individuals in the same proportion after the company reorganized as a partnership." Id. at 271. The court further observed that "no evidence exists that Stearns reorganized just to transfer this claim" and concluded that the assignment did not violate the Act. Id.

In this case, however, plaintiffs cannot argue that Star's dissolution effected a reorganization of business structure or effected an assignment by operation of law and thereby invoke that exception to the Assignment of Claims Act. Illinois law expressly provides that dissolution of a corporation does not effect a transfer of title to corporate assets.

---

14. The purpose underlying the Assignment of Claims Act, which derives from older versions of the Act, was to impose certain formalities to prevent the claims of government contractors from being purchased by other parties, to pre-

vent the multiple payment of such claims, and to preserve any defenses and counterclaims that the government may have against the original party. Kingsbury v. United States, 215 Ct.Cl. 136, 563 F.2d 1019, 1024 (1977).

805 Ill. Comp. Stat. 5/12.30(c)(1); *Mid–American Elevator Co.*, 223 Ill.Dec. 202, 679 N.E.2d. at 391. Moreover, as discussed above, the succession by Messrs. Page and Fenske, as shareholders of Star, to this takings claim as an asset of Star upon Star's dissolution does not permit plaintiffs to assert the claim individually. *See* subsection I.C.2. *supra.*

Plaintiffs cannot establish an assignment of Star's takings claim in accordance with the Assignment of Claims Act or by jurisprudential exception to the Act. In the absence of a valid assignment to Messrs. Page and Fenske, the asserted claim remains an asset of Star and, as a corporate asset, must be prosecuted by the corporation as the real party in interest rather than by the plaintiffs as successors-in-interest. RCFC 17(a).

## II. Conclusion

The documentary evidence in this case establishes that the corporation—rather than the individually named plaintiffs—was the party intended to be bound by the Lease with Petelle. Based on the intent of the corporation revealed in records contemporaneous to the execution of the Lease, the court finds that, at the time this suit was filed, Star was a party to the Lease and was the real party in interest to bring this action. The dissolution of Star after filing of the suit did not compromise Star's capacity to sue. Pursuant to the corporate survival statute and in the absence of a valid assignment under the Assignment of Claims Act, Star—not Messrs. Page and Fenske—continues to be the real party in interest in this case. Because Rule 17 requires that the real party in interest prosecute an action, the court determines that Star is the proper party to bring this takings claim and, as a corporate entity, Star must be represented by counsel to proceed before this court. *See* RCFC 81(d)(8) ("An individual may represent oneself ... as a party before the court... [but a] corporation may only be represented by counsel."). *See also Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council,* 506 U.S. 194, 202, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993) (stating that "a corporation may appear in the federal courts only through licensed counsel"). Similarly, counsel is required if Messrs. Page and Fenske prosecute this action in their capacities as former shareholders because the asserted claim is derivative rather than individual.

Rule 17 provides that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification ... by, or joinder or substitution of, the real party in interest." RCFC 17(a). Accordingly, in conformance with the Rules of this court, Messrs. Page and Fenske are directed to substitute Star International Ostrich, Inc., the real party in interest in this matter, as plaintiff on or before August 7, 2001. Further, on or before August 7, 2001, the corporation shall appear before the court represented by counsel who is a member of the bar of this court. If plaintiffs fail timely to comply with the court's directives in this paragraph, the case will then be subject to dismissal.

IT IS SO ORDERED.